## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THOMAS S. NEUBERGER; JERRY L. MARTIN; WILLIAM R. HAGUE, JR.; DELAWARE STATE SPORTSMEN'S ASSOCIATION, INC; and BRIDGEVILLE RIFLE & PISTOL CLUB, LTD., <br><br>         Plaintiffs. <br><br>       v. <br><br> DELAWARE DEPARTMENT OF SAFETY AND HOMELAND SECURITY; NATHANIEL MCQUEEN, JR., in his official capacity as Cabinet Secretary, Delaware Department of Safety and Homeland Security; and COL. MELISSA ZEBLEY, in her official capacity as Superintendent of the Delaware State Police, <br><br>         Defendants. | Civil Action No. 1:24-cv-00590-MN |

## OPENING BRIEF IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS

Date:   September 27, 2024

DELAWARE DEPARTMENT OF JUSTICE

Zachary Stirparo (#6928)
Deputy Attorney General
Civil, Defensive Litigation Unit
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
zachary.stirparo@delaware.gov


FRESHFIELDS BRUCKHAUS DERINGER US LLP
Eric B. Bruce (*pro hac vice pending*)
Jennifer B. Loeb (*pro hac vice pending*)
Lauren Kaplin (*pro hac vice pending*)
Jacob Johnston (*pro hac vice pending*)
700 13th Street, NW, 10th Floor
Washington, DC 20005
(202) 777-4500
eric.bruce@freshfields.com
jennifer.loeb@freshfields.com
lauren.kaplin@freshfields.com
jacob.johnston@freshfields.com

Rebecca Curwin Kerr (*pro hac vice pending*)
3 World Trade Center
175 Greenwich Street, 51st Floor
New York, NY 10007
(212) 277-4000
rebecca.kerr@freshfields.com

*Counsel for Defendants*
Delaware Department of Safety and Homeland
Security and DDSHS Secretary Nathaniel
McQueen, Jr. in his official capacity

DELAWARE DEPARTMENT OF JUSTICE
Zachary S. Stirparo (#6928)
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
zachary.stirparo@delaware.gov

*Counsel for Defendants*

Delaware Department of Safety and Homeland
Security, DDSHS Secretary Nathaniel McQueen,
Jr. in his official capacity, and DSP Superintendent
Melissa Zebley in her official capacity

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

STATEMENT OF FACTS ................................................................................................... 3

   I.  PARTIES TO THE PROCEEDING ...................................................................... 3

   II.  LEGISLATIVE HISTORY .................................................................................... 3

   III.  THE STATUTE'S MECHANICS ........................................................................... 4

LEGAL STANDARD ......................................................................................................... 5

ARGUMENT ...................................................................................................................... 6

   I.  THE SECOND AND FOURTEENTH AMENDMENT CLAIM MUST BE
   DISMISSED IN ITS ENTIRETY ............................................................................... 6

     A.  Plaintiffs lack standing to bring a Second and Fourteenth Amendment Claim. .............. 6

     B.  Plaintiffs fail to state a Second Amendment Claim. ....................................................... 9

       1. In answer to the first question: the Statute is a presumptively constitutional
       shall-issue licensing regime ......................................................................................... 12

       2. In answer to the second question: Plaintiffs cannot rebut the presumption of
       constitutionality because the Statute does not infringe or effectively deny rights under
       the Second Amendment ................................................................................................ 14

   II.  PLAINTIFFS' DELAWARE CONSTITUTIONAL CLAIM MUST BE
   DISMISSED ................................................................................................................ 15

     A.  The Eleventh Amendment bars state law claims against Defendants in
     federal court. .................................................................................................................... 15

     B.  Plaintiffs fail to state a Claim under the Delaware Constitution. .................................... 16

   III.  THE FOURTH AMENDMENT CLAIM MUST BE DISMISSED ................................. 17

     A.  Plaintiffs lack standing to bring a Fourth Amendment Claim. ....................................... 17

     B.  Plaintiffs fail to state a Fourth Amendment Claim. ......................................................... 18

   IV.  THE SECTION 1983 CLAIMS AGAINST DDSHS MUST BE DISMISSED ................ 20

CONCLUSION .................................................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**                                                      **Page(s)**

*Antonyuk v. Chiumento*,
    89 F.4th 271 (2d Cir. 2023) ........................................................................14, 15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................................6, 10

*AstraZeneca Pharms. LP v. Becerra*,
    -- F. Supp. 3d --, 2024 WL 895036 (D. Del. Mar. 1, 2024)....................................8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..............................................................................................6

*Binderup v. Att'y Gen. United States of Am.*,
    836 F.3d 336 (3d Cir. 2016)................................................................................12

*Cannon v. Delaware*,
    2012 WL 1657127 (D. Del. May 9, 2012)..........................................................16

*Carpenter v. United States*,
    585 U.S. 296 (2018)......................................................................................20, 21

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013).......................................................................6, 7, 18, 19

*Colo. Outfitters Ass'n v. Hickenlooper*,
    823 F.3d 537 (10th Cir. 2016) ..............................................................................9

*Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*,
    664 F. Supp. 3d 584 (D. Del. Mar. 7, 2023) .................................................2, 16

*Dempsey v. Del., Dep't of Pub. Safety*,
    579 F. Supp. 2d 616 (D. Del. 2008)...................................................................16

*Dist. of Columbia v. Heller*,
    554 U.S. 570 (2008)......................................................................................11, 12

*Firearm Owners Against Crime v. City of Harrisburg*,
    2016 WL 1162283 (M.D. Pa. Mar. 24, 2016)......................................................7

*Gazzola v. Hochul*,
    645 F. Supp. 3d 37 (N.D.N.Y. 2022).....................................................................7

*Harper v. Maverick Recording Co.*,
    562 U.S. 1080 (2010)..........................................................................................13

*Howlett By & Through Howlett v. Rose*,
  496 U.S. 356 (1990)........................................................................21

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)...............................................................5,7, 9, 18

*McRorey v. Garland*,
  99 F.4th 831 (5th Cir. 2024) ........................................................12

*Md. Shall Issue, Inc. v. Moore*,
  -- F.4th --, 2024 WL 3908548 (4th Cir. Aug. 23, 2024)................................ *passim*

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
  597 U.S. 1 (2022).................................................................. *passim*

*N.Y. State Rifle & Pistol Ass'n v. Cuomo*,
  804 F.3d 242 (2d Cir. 2015)...........................................................10

*Nat'l Ass'n for Gun Rts. v. Polis*,
  2024 WL 3085865 (D. Colo. May 2, 2024)...............................................7

*Norman v. State*,
  215 So. 3d 18 (Fla. 2017).............................................................13

*Oregon Firearms Fed'n v. Kotek*,
  682 F. Supp. 3d 874 (D. Or. 2023) ................................................11, 14

*PA Prison Soc'y. v. Cortes*,
  622 F.3d 215 (3d Cir. 2010)..........................................................8, 9

*Pennhurst State Sch. & Hosp. v. Halderman*,
  465 U.S. 89 (1984)..................................................................2, 16

*Rodriguez v. City of San Jose*,
  930 F.3d 1123 (9th Cir. 2019) ........................................................21

*Schneyder v. Smith*,
  653 F.3d 313 (3d Cir. 2011)...........................................................20

*Sherwin-Williams Co. v. Cnty. of Delaware, Pa.*,
  968 F.3d 264 (3d Cir. 2020)............................................................7

*Shotwell v. Del. Dep't of Safety & Homeland Sec.*,
  2020 WL 1333132 (D. Del. Mar. 23, 2020) .............................................21

*Sibron v. New York*,
  392 U.S. 40 (1967).................................................................19, 20

*Smith v. State*,
   2005 WL 2149410 (Del. 2005)..................................................................17

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016)..................................................................................6

*State v. Smith*,
   2020 WL 5223531 (Del. Super. Ct. Aug. 18, 2020)........................17, 21

*Storino v. Borough of Point Pleasant Beach*,
   322 F.3d 293 (3d Cir. 2003).......................................................................8

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009)..................................................................................9

*Taveras v. New York City*,
   2023 WL 3026871 (S.D.N.Y. Apr. 20, 2023)............................................7

*Tenaha Licensing LLC v. Tigerconnect, Inc.*,
   2020 WL 30426 (D. Del. Jan. 2, 2020).....................................................5

*United States v. Banks*,
   884 F.3d 998 (10th Cir. 2018) .................................................................20

*United States v. Brown*,
   448 F.3d 239 (3d Cir. 2006).....................................................................20

*United States v. Lucha El Libertad*,
   681 F. Supp. 3d 102 (S.D.N.Y. 2023).....................................................12

*United States v. Marcavage*,
   609 F.3d 264 (3d Cir. 2010)...............................................................20, 21

*United States v. Rahimi*,
   144 S. Ct. 1889 (2024).........................................................................11, 14

*United States v. Salerno*,
   481 U.S. 739 (1987).............................................................................6, 19

*United States v. Scheidt*,
   103 F.4th 1281 (7th Cir. 2024) ...............................................................10

*Whaley v. Schiliro*,
   2015 WL 1517154 (D. Del. Mar. 31, 2015) .......................................16, 17

*Whole Woman's Health v. Jackson*,
   595 U.S. 30 (2021).....................................................................................6

## Statutes

11 Del. C. § 1448 ........................................................................................................13, 20, 21

11 Del. C. § 1448B ....................................................................................................................5

11 Del. C. 1448D ............................................................................................... *passim*

42 U.S.C. § 1983........................................................................................................................3, 21

Ariz. Rev. Stat. Ann. §13-3112........................................................................................13, 15

Ark. Code Ann. §5-73-309 (Supp. 2021) .........................................................................13

Colo. Rev. Stat. § 18–12–206 ..........................................................................................14, 15

Fla. Stat. §790.06 (2021)....................................................................................................13, 15

Idaho Code Ann. § 18–3302K ........................................................................................13, 15

Ill. Comp. Stat., ch. 430, § 66/10 ...................................................................................15

Mo. Rev. Stat. § 571.101 (2016) .....................................................................................14

Mont. Code Ann. § 45–8–321 ..........................................................................................15

Okla. Stat., Tit. 21, § 1290.12 ..........................................................................................15

S.C. Code Ann. § 23–31–215 ............................................................................................15

Wyo. Stat. Ann. § 6-8-104 (2021) ...................................................................................14

## Other Authorities

Bill Detail, Del. S. 2, 152d Gen. Assemb. (2023).........................................................4

Del. Const. art. I, § 20 ......................................................................................................17

Fed. R. Civ. P. 12(b) ...........................................................................................................5, 17

## INTRODUCTION

Senate Substitute 1 for Senate Bill 2 (the *Statute*) is a straightforward handgun permitting statute carefully enacted by the Delaware General Assembly to reduce gun violence without encroaching on individual constitutional rights. Under this permitting regime, the Director of the State Bureau of Investigation (*SBI*) "shall issue" a handgun qualified purchaser permit (a *Permit*) to all applicants not barred by any of five narrow, objective, and definite criteria. The Statute therefore falls squarely within the group of "shall-issue" permitting laws that are presumptively constitutional under *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 14–18 (2022), and is "nearly identical," Compl. ¶ 67, to a Maryland statute the Fourth Circuit upheld on *en banc* review by a vote of 14-2, *Md. Shall Issue, Inc. v. Moore*, -- F.4th --, 2024 WL 3908548, at *9 (4th Cir. Aug. 23, 2024) (*en banc*). Because nothing in this commonsense legislation infringes rights under the U.S. or Delaware Constitutions, each of Plaintiffs' claims should be dismissed with prejudice.

*First*, Plaintiffs fail to state a Second and Fourteenth Amendment claim in Count I and to adequately allege standing to pursue one. Plaintiffs lack standing because their alleged injuries—difficulties or delays in acquiring handguns "when they need them"—are textbook non-cognizable claims stacked precariously on speculative allegations concerning what may (or may not) happen in the future regarding a Statute that has not yet been implemented. The Complaint's lack of clear, straightforward standing allegations is unsurprising, as no prospective purchaser otherwise entitled to buy a handgun will be meaningfully delayed or deterred by the Statute. Plaintiffs fail to a state a facial constitutional claim because the Statute "falls easily within the scope of 'shall-issue'

licensing laws that the Supreme Court has indicated are presumptively constitutional," *id.*, and nothing in the Complaint or in the Statute itself suggests it infringes Second Amendment rights.

*Second*, Plaintiffs' Delaware State Constitution claim (Count II) must be dismissed because the Eleventh Amendment bars federal courts from hearing state law claims against state entities. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). This Court affirmed this principle just last year in another Second Amendment case filed by Plaintiffs' counsel. In that case, Judge Andrews raised the issue via Order, leading plaintiffs to voluntarily dismiss their Delaware constitutional claim. *Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*, No. 1:22-cv-00951 (D. Del. Mar. 7, 2023), ECF No. 55. Even if Defendants were not entitled to Eleventh Amendment immunity, this claim should be dismissed for the same reasons as Plaintiffs' Second Amendment claim and because the Statute passes intermediate scrutiny.

*Third*, Plaintiffs claim a provision in the Statute requiring law enforcement to ensure "surrender or removal" of handguns purchased using a revoked permit violates the Fourth Amendment (Count III). Plaintiffs do not have standing to challenge the constitutionality of this provision, as no Plaintiff has pled he will apply for a permit at risk of revocation. Again, this is unsurprising, as revocation applies only to permit holders who perjure themselves, are a danger to themselves or others, or are otherwise barred from owning a handgun. Plaintiffs also fail to state a claim because the process by which handguns will be surrendered or removed has yet to be determined. The reasonableness of searches under the Fourth Amendment is highly fact specific, and there are several ways the State could constitutionally affect the surrender of handguns. This

highly-speculative claim attacking the constitutionality of an as-yet-unimplemented statute demonstrates exactly why there is a high bar for facial constitutional challenges such as Plaintiffs'.

*Fourth*, Plaintiffs' 42 U.S.C. § 1983 claims against the Delaware Department of Safety and Homeland Security (***DDSHS***) in Counts I and III must also be dismissed for an additional reason. As a department of the State of Delaware, DDSHS is not a "person" under section 1983, and the Eleventh Amendment immunizes it from section 1983 claims.

## STATEMENT OF FACTS

### I.    PARTIES TO THE PROCEEDING

Plaintiffs Neuberger, Martin, and Hague are individuals who allege that they *may* decide to purchase handguns at an unspecified, future time. Plaintiffs Delaware State Sportsmen's Association, Inc. (***DSSA***), and Bridgeville Rifle & Pistol Club, Ltd. (***BRPC***), are gun clubs.

Defendant DDSHS is a Delaware State government department charged with protecting the safety of people and property in Delaware. Defendant Nathaniel McQueen, Jr. is the Cabinet Secretary of DDSHS. Defendant Colonel Melissa Zebley is the Superintendent of the State Police.

### II.   LEGISLATIVE HISTORY

After five years of deliberation and debate, Governor Carney signed the Statute into law on May 16, 2024. The purpose of the Statute is to reduce gun violence without infringing the Second Amendment rights of law-abiding citizens. As the Statute's sponsor explained: "123 people die and 577 people are wounded by guns in Delaware in an average year. That is the fifth highest rate of gun violence in the nation . . . . [Senate Bill 2] will drastically reduce these statistics by creating a requirement for a handgun qualified purchaser permit." Bill Detail, Del. S. 2, 152d Gen. Assemb. (2023).[1]

---

[1] Available at https://legis.delaware.gov/BillDetail/130218.

### III.    THE STATUTE'S MECHANICS

The enacted Statute is a "shall-issue" handgun permitting scheme under which authorities *shall* issue a permit to all applicants who satisfy a set of non-discretionary criteria. *See e.g.*, *Bruen*, 597 U.S. at 13 n.1 (listing examples of "shall-issue" statutes). Within 30 days of receiving an application for a Permit, the SBI "shall . . . issue" a permit for the purchase of a handgun to any applicant who meets five criteria. 11 Del. C. § 1448D(b).

These five criteria are narrow, objective, and definite. *First*, the applicant must be at least 21 years old. *Id.* § 1448D(f)(1). *Second*, the applicant cannot be otherwise prohibited from purchasing, owning, possessing, or controlling a deadly weapon—for example, because the applicant was convicted of a felony, narcotics, or domestic violence offense; was involuntarily committed to a mental institution; or is subject to a protective order. *Id.* § 1448D(f)(2). *Third*, an applicant will not receive a permit if there is probable cause to believe the applicant poses a danger of causing physical injury to the applicant or others. *Id.* § 1448D(f)(3). *Fourth*, the applicant must have passed a firearms training course within five years of the application. *Id.* § 1448D(f)(4). And *fifth*, the applicant cannot be otherwise prohibited from purchasing or possessing firearms under Delaware or federal law. *Id.* § 1448D(f)(5). If an applicant does not meet one of these criteria, the Director of the SBI (***Director***) must deny the permit application in writing, setting forth the reason for the denial. *Id.* § 1448D(i). Denial of a permit is subject to two rounds of *de novo* judicial review. *Id.* § 1448D(m)(1)–(2).

The Director may revoke a Permit if a permit-holder no longer meets the five criteria. *Id.* (***Revocation Provision***). The Director must notify a permit-holder in writing and without delay when a permit is revoked. *Id.* § 1448D(l)(2). Revocation of a permit is also subject to two rounds of *de novo* judicial review. *Id.* § 1448D(m)(1)–(2). If the Director revokes a permit and there is "probable cause" to believe the former permit-holder possesses handguns acquired with the

revoked permit, law enforcement "shall take action to ensure the surrender or removal of the handguns." *Id.* § 1448D(l)(3) (***Probable Cause Provision***). The Statute does not specify a procedure for "surrender or removal." Under the Statute, the SBI "may adopt regulations to administer, implement, and enforce" this requirement. *Id.* § 1448D(q).

The Statute does not criminalize purchasing a handgun, notwithstanding Plaintiffs' repeated mistaken claims to the contrary. *E.g.*, Compl. ¶¶ 2, 5.[2] The Statute is to be implemented the earlier of 18 months from the date of enactment or after the SBI establishes the necessary processes for implementation. 11 Del. C. § 1448B(5).

## LEGAL STANDARD

Plaintiffs lack standing to bring Second and Fourth Amendment claims. FED. R. CIV. P. 12(b)(1). To allege standing, plaintiffs must show "an invasion of a legally protected interest that is concrete and particularized and actual or imminent." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotations and citation omitted).

Plaintiffs also fail to state a claim that the Statute violates the U.S. or Delaware Constitutions. FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Legal conclusions must be supported by factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

A facial challenge to a law that has not yet been implemented, such as the Statute, is "the most difficult challenge to mount successfully, since the challenger must establish that no set of

---

[2] *See Tenaha Licensing LLC v. Tigerconnect, Inc.*, 2020 WL 30426, at *2 (D. Del. Jan. 2, 2020) (holding "a court need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit") (internal quotations and citation omitted).

circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987).

## ARGUMENT

## I. THE SECOND AND FOURTEENTH AMENDMENT CLAIM MUST BE DISMISSED IN ITS ENTIRETY.

### A. Plaintiffs lack standing to bring a Second and Fourteenth Amendment Claim.

To invoke federal jurisdiction, Plaintiffs must establish standing, which requires them to allege they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The standing inquiry is "especially rigorous" where, as here, the constitutionality of a statute is at issue. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). The pleading standard is even higher in pre-enforcement actions such as this one, as there is no "unqualified right to pre-enforcement review of constitutional claims in federal court." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 49 (2021).

Plaintiffs lack standing to bring a Second and Fourteenth Amendment claim because they do not allege a cognizable injury. To plead a cognizable injury—the first and most fundamental requirement of Article III standing—a plaintiff must allege harm that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks omitted). An allegation of future injury suffices only if the threatened injury is "certainly impending," or, in some cases, there is a "substantial risk that the harm will occur." *Clapper*, 568 U.S. at 410, 414 n.5.

Plaintiffs' standing allegations are textbook examples of the kind of speculative Second Amendment pleading courts routinely reject. For example, the court in *Taveras v. New York City*, 2023 WL 3026871 (S.D.N.Y. Apr. 20, 2023), dismissed claims for lack of standing because the

plaintiff's allegation that "he has a present intention and plan to purchase and possess shotguns and rifles for all lawful purposes" was insufficient to establish standing. *Id.* at *6. Likewise, *Frey v. Bruen* ruled that plaintiffs lacked standing where they allegedly "intend[ed] to" carry handguns in public in violation of New York law. 2022 WL 522478, at *5 (S.D.N.Y. Feb. 22, 2022). *See also Gazzola v. Hochul*, 645 F. Supp. 3d 37, 54 (N.D.N.Y. 2022), *aff'd*, 88 F.4th 186 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 2659 (2024) (allegation that plaintiff "ha[s] a concealed carry permit that [he] want[s] to timely renew," but which will now "require a valid training course" was insufficient to establish standing, as plaintiff "fail[ed] to demonstrate how this single sentence . . . amounts to an actual, imminent, concrete, and particularized injury").[3] This Court should likewise dismiss Count I because each of Plaintiff's standing allegations are speculative and uncertain.

**Neuberger.** Neuberger fails to plead standing because his alleged injury is entirely speculative, relying on "ifs," "whens," "coulds," and "woulds" to allege his claims. *See Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 297–98 (3d Cir. 2003) (no imminent injury in fact where "one cannot describe how the [plaintiffs] will be injured without beginning the explanation with the word 'if'"). Neuberger alleges he will need to purchase a handgun *if* violence breaks out "at any time." Compl. ¶ 27. According to Neuberger, terrorist attacks or riots "*could*

---

[3] *See also Sherwin-Williams Co. v. Cnty. of Delaware, Pennsylvania*, 968 F.3d 264, 269–71 (3d Cir. 2020) (plaintiff lacked standing because harm "might [happen] . . . but [] might not," and such "uncertainty" failed to demonstrate "an existing injury or one that is certainly impending"); *Firearm Owners Against Crime v. City of Harrisburg*, 2016 WL 1162283, at *6 (M.D. Pa. Mar. 24, 2016) (dismissing Second Amendment claim for lack of standing because plaintiffs failed to plausibly allege "an intention to engage in a course of conduct that violate[d] the ordinance" or a "credible threat of prosecution thereunder") (citations omitted); *Nat'l Ass'n for Gun Rts. v. Polis*, 2024 WL 3085865, at *8 (D. Colo. May 2, 2024) (plaintiff lacked standing to bring Second Amendment claim where purported intent to engage in course of conduct causing the alleged injury "hinge[d] on little more than speculation and contingency").

*happen* in Delaware," *id.* ¶¶ 27, 29, in which case he could face danger "*if* his vehicle is trapped," *id.* ¶ 27 (emphasis added), which *could* occur if his preferred route home has been closed due to hypothetical protestors who *could* become violent. *Id.* The Complaint alleges "*[w]hen* Neuberger will need a handgun it will be because of a reasonably expected emergency." *Id.* ¶ 33 (emphasis added). "The fact that the word 'if' is required to describe [plaintiff's] alleged injury demonstrates that the harm [he] complains of is neither actual nor certainly impending." *AstraZeneca Pharms. LP v. Becerra*, -- F. Supp. 3d --, 2024 WL 895036, at *8 (D. Del. Mar. 1, 2024).

**Hague.** The Complaint's sole allegation about Hague is a boilerplate assertion that "[h]e fears the challenged legislation will impact his ability to purchase firearms when he needs them *in the future*." Compl. ¶ 36 (emphasis added). But the fact that Hague may need a gun at "some indefinite future time" is insufficient to allege an imminent injury. *See PA Prison Soc'y. v. Cortes*, 622 F.3d 215, 228 (3d Cir. 2010) (citing *Lujan*, 504 U.S. at 564 n.2).

**Martin.** The Complaint asserts Martin will continue to "regularly purchase[] and collect[] firearms . . . in the future," Compl. ¶ 35, and—repeating Hague's boilerplate language—alleges Martin "fears the challenged legislation will impact his ability to purchase firearms when he needs them *in the future*." *Id.* (emphasis added). But as with Hague, these generalized allegations fail to translate into the concrete and particularized injury Article III standing requires. *See Lujan*, 504 U.S. at 564 n.2 (plaintiff lacked standing for Second Amendment claim because "a mere profession of an intent, some day" to engage in an activity without a description of concrete plans to do so is not enough to establish standing); *PA Prison Soc. v. Cortes*, 622 F.3d 215, 228 (3d Cir. 2010) ("When plaintiffs allege a future injury, that injury must be certainly impending, not an injury that will only occur at some indefinite future time." (citations omitted)).

***DSSA and BRPC.*** Plaintiffs also fail to allege DSSA and BRPC have standing to challenge the Statute. Plaintiffs allege only that DSSA and BRPC are firearms advocacy organizations "whose members will be subjected to the Permit-to-Purchase requirement," which will "leave [its] members vulnerable to attack[.]" Compl. ¶ 39. Other than allegations pertaining to Hague and Martin, which are insufficient to plead standing, *see supra* at 8, DSSA and BRPC's claims are unsupported by any allegations regarding a specific DSSA or BRPC member. But organizations must "make specific allegations establishing that at least one *identified* member . . . would suffer harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009) (emphasis added). "The mere possibility that 'some day' a member of [plaintiff organization] might wish to obtain or retain a firearm . . . and that he or she might then experience difficulties obtaining the requisite [permitting requirements] is insufficient to establish an imminent injury for purposes of Article III standing." *Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 553 (10th Cir. 2016).

Because each Plaintiff failed to allege injury-in-fact, Plaintiffs lack Article III standing to bring a Second Amendment claim and Count I should be dismissed as to all Defendants.

**B.      Plaintiffs fail to state a Second Amendment Claim.**

Plaintiffs do not state a Second Amendment claim—nor could they—and Count I must therefore be dismissed with prejudice. The Statute is constitutional under *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), and "nearly identical," Compl. ¶ 67, to a Maryland statute the Fourth Circuit recently upheld on *en banc* review by a vote of 14-2, *Md. Shall Issue*, 2024 WL 3908548, at *9. Plaintiffs' legal assertions to the contrary misstate governing law and its application to the Statute, and these legal errors are afforded no weight on a motion to dismiss. *See Ashcroft*, 556 U.S. at 678.

*Bruen* establishes a two-step framework for evaluating Second Amendment challenges. Courts first determine "whether the plain text" of the Second Amendment "covers an individual's

conduct," *Bruen*, 597 U.S. at 17, such that "the challenged law burdens the [Second Amendment],"
*N.Y. State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242, 259 (2d Cir. 2015). *See also Md. Shall
Issue*, 2024 WL 3908548, at *5 ("[A] regulation falls within the ambit of the Second Amendment
only if the regulation 'infringes' the Second Amendment right[.]"); *United States v. Scheidt*, 103
F.4th 1281, 1284 (7th Cir. 2024) (declining to undertake the second step of *Bruen* analysis where
statute did not "infringe" Second Amendment rights).[4] If the challenged law burdens the Second
Amendment, at a second step, "the government must demonstrate that the regulation is consistent
with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 17.

Here, the Court need not reach step two of the analysis because "shall-issue" licensing laws
like the Statute are presumptively constitutional under *Bruen*, and Plaintiffs have not rebutted, and
cannot rebut, that presumption.[5] *See Md. Shall Issue*, 2024 WL 3908548, at *7. In *Bruen*, the
Supreme Court emphasized in footnote nine that "shall-issue" licensing laws such as the Statute
do not necessarily "prevent law-abiding, responsible citizens from exercising their Second
Amendment right[s]." 597 U.S. at 38 n.9. *Bruen* was clear that "nothing in [the Court's] analysis

---

[4] Plaintiffs inaccurately claim that under *Heller* and *Bruen* "the *only* exception to [the Second
Amendment], is that arms that are both 'dangerous and unusual' are not protected," and imply that
a weapon in "common use" is thus protected. Compl. ¶ 59 (emphasis added). *Heller* instead
presents this as an "example" of one of multiple "categories of traditional exceptions" to the
Second Amendment: that weapons not in "common use" are not protected, as shown by the
"historical tradition of prohibiting the carrying of dangerous and unusual weapons." *United States
v. Rahimi*, 144 S. Ct. 1889, 1923 (2024) (quoting *Dist. of Columbia v. Heller*, 554 U.S. 570, 626
(2008)). Further, this language means only that a weapon must be in common use to be protected,
not that being in common use automatically renders a weapon protected. It is presented as a
necessary, but not sufficient, condition for Second Amendment protection.

[5] *Bruen* concerned shall-issue regimes for open carry licenses, but "the rationale supporting the
Supreme Court's 'shall-issue' discussion applies with equal force to 'shall-issue' licensing laws
governing the possession of firearms, and nothing in that discussion signals a contrary intent."
*Maryland Shall Issue*, 2024 WL 3908548, at *7; *see also Oregon Firearms Fed'n v. Kotek*, 682 F.
Supp. 3d 874, 936 (D. Or. 2023) (applying *Bruen* footnote nine to a permit-to-purchase regime).

should be interpreted to suggest the unconstitutionality of the 43 States' 'shall-issue' licensing regimes." *Id.* In a concurrence joined by the Chief Justice, Justice Kavanaugh underscored that "shall-issue licensing regimes are constitutionally permissible, subject of course to an as-applied challenge if a shall-issue licensing regime does not operate in that manner in practice." *Id.* at 80 (Kavanaugh, J., concurring). Justice Kavanaugh then set forth defining features of shall-issue regimes, explaining that they "may require a license applicant to undergo fingerprinting, a background check, a mental health records check, and training in firearms handling and in laws regarding the use of force, among other possible requirements." *Id.* The Supreme Court's pronouncements in footnote nine of *Bruen* are binding dicta if they are "recent and detailed" and, as the Fifth Circuit recently held, "it doesn't get more recent or detailed than [the 'shall-issue' discussion in] *Bruen*." *McRorey v. Garland*, 99 F.4th 831, 837 (5th Cir. 2024).

Thus, according to the framework set forth in *Bruen*, there are two Second Amendment questions before the Court: *first*, is the Statute a presumptively-constitutional "shall-issue" permitting law, and *second*, can plaintiffs rebut its constitutionality? *See Md. Shall Issue*, 2024 WL 3908548, at *7 ("[W]e hold that non-discretionary 'shall-issue' licensing laws are presumptively constitutional . . . a plaintiff [may] rebut this presumption of constitutionality by showing that a 'shall-issue' licensing law effectively 'den[ies]' the right to keep and bear arms"); *see also United States v. Lucha El Libertad*, 681 F. Supp. 3d 102, 110 (S.D.N.Y. 2023) ("[B]oth the majority opinion [in *Bruen*] and Kavanaugh concurrence indicated the likely constitutionality of shall-issue regimes . . . *without* first conducting any exhaustive historical analysis, suggesting that such 'shall-issue' regimes do not infringe the right to keep and bear arms.").[6]

---

[6] Furthermore, "shall-issue" permit-to-purchase laws such as the Statute "comport with the Second Amendment because they affect individuals or conduct unprotected by the right to keep and bear

**1.   In answer to the first question: the Statute is a presumptively constitutional shall-issue licensing regime.**

The Statute is a prototypical "shall issue" licensing regime under which the SBI "*shall*, on application, issue a handgun qualified purchaser permit to all" applicants meeting five criteria. 11 Del. C. § 1448D(b) (emphasis added); *see supra* at 4. Each criterion is "narrow, objective, and definite," *Bruen*, 597 U.S. at 13 n.9, and many of the 43 shall-issue licensing regimes cited in *Bruen* use the same criterion to ensure "those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.'" *Id*. As Plaintiffs allege, the Statute is "nearly identical," Compl. ¶ 67, to a Maryland permitting regulation that "falls easily within the scope of 'shall issue' licensing laws that Supreme Court has indicated are presumptively constitutional." *Md. Shall Issue*, 2024 WL 3908548, at *9. The five criteria in the Statute are:

*First*, an applicant must be at least 21 years old. 11 Del. C. § 1448D(f)(1). Age is an objective criterion, *Harper v. Maverick Recording Co.*, 562 U.S. 1080, 1081 (2010) (referring to "age" as an "objective characteristic[]"), and is common to many of the shall-issue licensing regimes cited in *Bruen*.[7]

*Second*, an applicant must not be "prohibited from purchasing, owning, possessing, or controlling a deadly weapon under § 1448 of this title." 11 Del. C. § 1448D(f)(2). Section 1448 bars from purchasing or possessing a gun individuals (1) convicted or indicted for a felony, narcotics, or domestic violence offense; (2) involuntarily committed to a mental institution or

---

arms." *Binderup v. Att'y Gen. United States of Am.*, 836 F.3d 336, 343 (3d Cir. 2016) (*en banc*). Indeed, "[t]he plain text [of the Second Amendment] covers plaintiffs' right 'to keep and bear arms[,]'" but "on its face 'keep and bear' does not include purchase." *McRorey v. Garland*, 99 F.4th 831, 838 (5th Cir. 2024) (internal citations omitted). Permit-to-purchase laws merely "impos[ing] conditions and qualifications on the commercial sale of arms," are "presumptively lawful regulatory measures." *Heller*, 554 U.S. at 626–27, 627 n.26.

[7] *E.g.*, Ariz. Rev. Stat. Ann. §13-3112(E)(2); Ark. Code Ann. §5-73-309(3)(A) (Supp. 2021); Fla. Stat. §790.06(2)(b) (2021); Idaho Code Ann. §18-3302K(4)(a).

found mentally incompetent; (3) subject to a protective order or order of relinquishment; and (4) who illegally possess a controlled substance. 11 Del. C. § 1448. This is an objective criterion, *Norman v. State*, 215 So. 3d 18, 28 (Fla. 2017) ("[O]bjective requirements include that the applicant is not a convicted felon [and] has not been committed to a mental institution"), and is consistent with many of the statutory schemes cited in *Bruen*.[8]

*Third*, the applicant must not be "a person who poses a danger of causing physical injury to self or others by owning, purchasing, or possessing firearms" if such danger is "supported by probable cause." 11 Del. C. § 1448D(f)(3). This is a sufficiently objective criterion conferring less discretion on state officials than statutes cited in *Bruen*.[9] Moreover, permit applicants may appeal a rejection to the Justice of the Peace Court and again to the Superior Court for *de novo* hearings, which "significantly limits the discretion of individual permitting agents." *Or. Firearms Fed'n v. Kotek*, 682 F. Supp. 3d 874, 939 (D. Or. 2023) (holding "dangerousness" standard sufficiently objective because permitting regimes cited in *Bruen* contained similar grounds); *see also Antonyuk v. Chiumento,* 89 F.4th 271, 324–25 (2d Cir. 2023) ("Of the forty-three licensing regimes that *Bruen* described as consistent with its analysis, more than a dozen confer some measure of discretion on licensing officers") (remanded for further consideration in light of *United States v. Rahimi*, 144 S. Ct. 1889 (2024)).

---

[8] *E.g.*, Fla. Stat. §790.06(2)(n) (2021); Ariz. Rev. Stat. Ann. §13-3112(E)(3)–(4); Ark. Code Ann. §5-73-309(5).

[9] *E.g.*, Mo. Rev. Stat. § 571.101 (2016) ("reasonable grounds to believe" the applicant "has been or is reasonably likely to be a danger to himself or others"); Colo. Rev. Stat. §18-12-206(2) ("reasonable belief" that "the applicant will present a danger to self or others"); Wyo. Stat. Ann. § 6-8-104 (2021) ("reasonable grounds to believe that the applicant has been or is reasonably likely to be a danger to himself or others").

13

*Fourth*, applicants must complete a "firearms training course," 11 Del. C. § 1448D(f)(4), which *Bruen* cited as an example of a sufficiently objective criteria shall-issue regimes "often require." *Bruen*, 597 U.S. at 38 n.9.

*Fifth*, the applicant must not be a "person who is otherwise prohibited from purchasing or possessing firearms under the law of this State or federal law." 11 Del. C. § 1448D(f)(5). This requirement is also identical to requirements in many of the shall-issue statutes cited in *Bruen*.[10]

Because each of the five criterion are objective and definite, the Statute is a presumptively constitutional shall-issue licensing regime. *See Antonyuk,* 89 F.4th at 325 (holding permitting requirements were objective and definite because several "[o]f the forty-three licensing regimes that *Bruen* described as consistent with its analysis" contained similar requirements), 2024 WL 3259671.

> **2.     In answer to the second question: Plaintiffs cannot rebut the presumption of constitutionality because the Statute does not infringe or effectively deny rights under the Second Amendment.**

Plaintiffs' constitutional challenge "can survive step one of the *Bruen* analysis only if they demonstrate that the law "'infringes,' or effectively denies," the Second Amendment right. *Md. Shall Issue*, 2024 WL 3908548, at *9 (quoting *Bruen*, 597 U.S. at 38 n.9). To do so, Plaintiffs must show the law has been "put toward abusive ends," for example, by imposing "lengthy wait times in processing license applications or exorbitant fees." *Bruen*, 597 U.S. at 38 n.9.

Plaintiffs make no such allegations here; nor could they. The Statute requires the SBI to issue a Permit within 30 days from the application date, 11 Del. C. § 1448D(h)—which is fewer

---

[10] *E.g.*, Ariz. Rev. Stat. Ann. §13-3112(E)(3); Colo. Rev. Stat. §18-12-206(c); Fla. Stat. §790.06(2)(n) (2021).

than many of the presumptively-constitutional "shall issue" statutes cited in *Bruen*.[11] Further, the application fee and training course costs are unspecified, so there is no basis for challenging them. More than a year before the Statute is likely to be implemented, Plaintiffs have not—and cannot—adequately allege the Statute has been put toward abusive ends.

## II.    PLAINTIFFS' DELAWARE CONSTITUTIONAL CLAIM MUST BE DISMISSED.

### A.    The Eleventh Amendment bars state law claims against Defendants in federal court.

Count II must be dismissed because the Eleventh Amendment immunizes state entities and officials against state law claims in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) ("it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law."). *Pennhurst* is clear that the *Ex Parte Young* exception to Eleventh Amendment immunity—which permits suits challenging the *federal* constitutionality of a state official's action—does not apply to state law claims seeking injunctive relief such as Plaintiffs' claim here. *Id*.

The Eleventh Amendment applies both to states and to "a state agency or department or state official where the state is the real, substantial party in interest." *Cannon v. Delaware*, 2012 WL 1657127, at *6 (D. Del. May 9, 2012) (internal quotations and citation omitted). Consistent with this rule, this Court has repeatedly held that the Eleventh Amendment bars state law claims against Defendants. *See, e.g.*, *Dempsey v. Del., Dep't of Pub. Safety*, 579 F. Supp. 2d 616, 618 n.3 (D. Del. 2008), *aff'd*, 359 F. App'x 347 (3d Cir. 2009) (DDSHS); Order, *Delaware State*

---

[11] *See, e.g.*, Colo. Rev. Stat. § 18–12–206(1) (90 days); Fla. Stat. § 790.06(c) (90 days); Idaho Code Ann. § 18–3302K(1) (90 days); Ill. Comp. Stat., ch. 430, § 66/10(e) (90 days); S.C. Code Ann. § 23–31–215(C) (90 days); Okla. Stat., Tit. 21, § 1290.12(13) (60 or 90 days); Mont. Code Ann. § 45–8–321(1) (60 days). *See also Md. Shall Issue*, 2024 WL 3908548, at *11 (finding statute's 30-day period is not lengthy where it is "far shorter than many of the permissible processing periods cited by the Supreme Court in *Bruen*").

*Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety & Homeland Sec.*, No. 1:22-cv-00951 (D. Del. Mar. 7, 2023), D.I. 55, 56 (Cabinet Secretary of DDSHS); *Whaley v. Schiliro*, 2015 WL 1517154, at *2 (D. Del. Mar. 31, 2015), *aff'd*, 644 F. App'x 185 (3d Cir. 2016) (Superintendent of Delaware State Police). The Court should do the same in this case.

### B.  Plaintiffs fail to state a Claim under the Delaware Constitution.

Count II of the Complaint should also be dismissed because Plaintiffs fail to state a claim on which relief can be granted. FED. R. CIV. P. 12(b)(6). *First*, any rights Plaintiffs have under Section 20 of Delaware's Constitution to purchase handguns are coextensive with their Second Amendment rights, and Plaintiffs fail to state a claim for the same reasons. *See supra* at 14–15. Section 20 has never been interpreted to confer a right to purchase weapons beyond any such right conferred by the Second Amendment, *cf. Smith v. State*, 2005 WL 2149410, at *3 (Del. 2005) (holding that the privilege to carry a concealed weapon conferred by Section 20 is regulated by Delaware's licensing statute), and the relevant text of the two constitutional provisions is substantively identical, *compare* DEL. CONST. art. I, § 20 ("[a] person has the right to keep and bear arms . . .") *with* U.S. CONST. amend. II ("the rights of the people to keep and bear arms shall not be infringed").

*Second*, even if Section 20 conferred greater right to purchase handguns than the Second Amendment, Plaintiffs fail to state a claim because the Statute withstands intermediate scrutiny. Intermediate scrutiny asks whether "the government's stated objective [is] significant, substantial, or important; and there [is] a reasonable fit between the challenged regulation and the asserted objective." *State v. Smith*, 2020 WL 5223531, at *5 (Del. Super. Ct. Aug. 18, 2020). Here, the Statute's legislative history shows the State intended to reduce gun violence by ensuring handguns are sold only to law-abiding adults with basic firearm training. *See supra* at 3. There is a clear, reasonable fit between this important interest and the Statute, which institutes a shall-issue

16

permitting regime for the purchase of handguns. The Statute therefore passes intermediate scrutiny, providing an additional basis on which Plaintiffs' Section 20 claim should be dismissed.

### III. THE FOURTH AMENDMENT CLAIM MUST BE DISMISSED.

#### A. Plaintiffs lack standing to bring a Fourth Amendment Claim.

Plaintiffs also lack standing to bring a Fourth Amendment claim in Count III because they fail to allege a cognizable injury that is "concrete and particularized," and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560–61; *see also supra* Part I(A). Plaintiffs' Fourth Amendment claim relates to the Probable Cause Provision, which provides that if the SBI revokes a permit, law-enforcement shall "take action to ensure surrender or removal of [the permit-holder's] handguns" if there is "probable cause to believe" the permit-holder still has handguns purchased with the permit. 11 Del. C. § 1448D(l)(3).

To allege standing, Plaintiffs must plead that their Fourth Amendment rights are implicated. Each Plaintiff must therefore allege that (1) he will apply for a permit; (2) the SBI will issue the permit; (3) he will purchase handguns with the permit; (4) he will take an action warranting revocation of the permit, for example, by posing a danger of causing physical harm to himself or others, or by being convicted of a crime of violence; (5) the Director will revoke his permit; (6) he will retain the handguns purchased with the permit; (7) there will be probable cause to believe he has retained the handguns; and (8) the State Police or a local law-enforcement agency will take action to ensure surrender or removal of the handguns. *See* 11 Del. C. § 1448D(l)(3). None of the Plaintiffs pleads even the first step, let alone all eight. And even if they did, these allegations would be too speculative a basis for standing. *See Amnesty Int'l USA*, 568 U.S. at 410 (2013) (respondents lacked standing to allege Fourth Amendment claim because their argument rested on a "highly speculative fear" requiring a chain of five hypothetical events).

17

***Neuberger.*** Neuberger alleges that he will not apply for a permit, Compl. ¶ 30, so there is no threat—much less an imminent one—that the Director will revoke his permit or that Neuberger will be subject to the Probable Cause Provision.

***Hague, Martin, DSSA, and BRPC.*** The remaining Plaintiffs do not allege whether they or their members intend to apply for a permit. Compl. ¶¶ 35-36, 39. As a result, they cannot possibly allege that they or any of their members will receive permits and purchase guns with those permits; have those permits revoked; and be subject to the Revocation Provision. And even if the Complaint had alleged that these plaintiffs or their members intended to apply for permits, they could not allege the string of eight hypothetical events, set out above, with sufficient certainty or particularity. *See Amnesty Int'l USA*, 568 U.S. at 410 (2013) (no standing for Fourth Amendment claim where purported injury hinges on a "chain of contingencies"). These plaintiffs have not— and cannot—allege standing to facially challenge the Probable Cause Provision.

As a result of their failure to plead a cognizable legal injury, all Plaintiffs lack standing to bring a facial constitutional challenge on Fourth Amendment grounds.

### B.    Plaintiffs fail to state a Fourth Amendment Claim.

A facial challenge to a legislative act is "the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *Salerno*, 481 U.S. at 745. The Supreme Court is particularly wary of facial challenges under the Fourth Amendment, because the "constitutional validity of a warrantless search is pre-eminently the sort of question which can only be decided in the concrete factual context of the individual case." *Sibron v. New York*, 392 U.S. 40, 59 (1967). When assessing the reasonableness of a seizure, a court "must balance the nature and quality of the intrusion on the individual's Fourth

18

Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Schneyder v. Smith*, 653 F.3d 313, 325 (3d Cir. 2011) (citation omitted).

Here, the Statute does not specify how the Probable Cause Provision will be implemented; instead, the SBI is directed to "adopt regulations to administer, implement, and enforce" the Statute. 11 Del. C. § 1448D(q). And because the Statute has not yet been implemented, there are no applicable procedures or searches for this Court to evaluate. As there are no guidelines for administering the Probable Cause Provision—let alone "factual context" to assess, *Sibron*, 392 U.S. at 59—it is impossible for Plaintiffs to allege the Statute will violate the Fourth Amendment in "all of its applications." *United States v. Marcavage,* 609 F.3d 264, 273 (3d Cir. 2010).

There are multiple constitutional processes the SBI could use to administer the Probable Cause Provision. *First*, law enforcement could provide notice to individuals whose permits have been revoked and instruct them to surrender handguns purchased with the permit. *See United States v. Brown*, 448 F.3d 239, 245 (3d Cir. 2006) (Fourth Amendment relevant only to seizures). *Second*, law enforcement could obtain a warrant before removing handguns purchased with a revoked permit, which would be constitutional under the Fourth Amendment. *See, e.g.*, *United States v. Banks*, 884 F.3d 998, 1011 (10th Cir. 2018) ("A search or seizure is presumptively reasonable if it's based on a warrant supported by probable cause.") (*citing Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)). *Third*, even without a warrant, there are circumstances in which a seizure conducted pursuant to the Statute would be constitutional. For example, if a permit-holder is subject to a restraining order for threatening a child, *see* 11 Del. C. § 1448(a)(6), then the warrantless removal of handguns purchased with that permit would likely be constitutional because the individual poses a credible threat to the safety of others. *See, e.g., Carpenter v. United States*, 585 U.S. 296, 319–20 (2018) (recognizing that exigent circumstances justifying a warrantless search include

"protect[ing] individuals who are threatened with imminent harm"). Similarly, if the Director revokes an individual's permit because the individual is mentally ill, *see* 11 Del. C. § 1448(a)(2), the warrantless removal of handguns purchased with that permit would again likely be constitutional because law enforcement would have an objective, reasonable basis to conclude there was "an immediate need to protect others or themselves from serious harm." *See Rodriguez v. City of San Jose*, 930 F.3d 1123, 1138 (9th Cir. 2019) (citation omitted) (holding seizure did not violate Fourth Amendment where individual was experiencing an "acute mental health episode"); *see also Smith*, 2020 WL 5223531, at *6 (ruling that order requiring mentally ill Air Force member to relinquish his gun was reasonable).

As Plaintiffs have not alleged that the Probable Cause Provision is "unconstitutional in all its applications," *Marcavage,* 609 F.3d at 273, their facial constitutional challenge fails, and Count III must be dismissed as to all Defendants for failure to state a claim.

## IV.    THE SECTION 1983 CLAIMS AGAINST DDSHS MUST BE DISMISSED.

Finally, Counts I and III of the Complaint also must be dismissed as against DDSHS because DDSHS is a department of the State of Delaware, not a "person" under 42 U.S.C. § 1983. *Howlett By and Through Howlett v. Rose*, 496 U.S. 356, 365 (1990) ("the State and arms of the State . . . are not subject to suit under § 1983"). This Court has previously recognized that DDSHS is an arm of the State immune from suit under section 1983, *see, e.g.*, *Shotwell v. Del. Dep't of Safety & Homeland Sec.,* 2020 WL 1333132, at *3 (D. Del. Mar. 23, 2020), and should do so again here.

## <u>CONCLUSION</u>

For the foregoing reasons, the Complaint should be dismissed with prejudice.

Dated:  September 27, 2024

Respectfully submitted,

DELAWARE DEPARTMENT OF JUSTICE

*/s/ Zachary S. Stirparo*
Zachary Stirparo (#6928)
Civil, Defensive Litigation Unit
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
zachary.stirparo@delaware.gov

FRESHFIELDS BRUCKHAUS DERINGER US LLP
Eric B. Bruce (*pro hac vice pending*)
Jennifer B. Loeb (*pro hac vice pending*)
Lauren Kaplin (*pro hac vice pending*)
Jacob Johnston (*pro hac vice pending*)
700 13th Street, NW, 10th Floor
Washington, DC 20005
(202) 777-4500
eric.bruce@freshfields.com
jennifer.loeb@freshfields.com
lauren.kaplin@freshfields.com
jacob.johnston@freshfields.com

Rebecca Curwin Kerr (*pro hac vice pending*)
3 World Trade Center
175 Greenwich Street, 51st Floor
New York, NY 10007
(212) 277-4000
rebecca.kerr@freshfields.com

*Counsel for Defendants*
Delaware Department of Safety and Homeland
Security and DDSHS Secretary Nathaniel
McQueen, Jr. in his official capacity

DELAWARE DEPARTMENT OF JUSTICE
Zachary S. Stirparo (#6928)
Carvel State Office Building
820 N. French Street, 6th Floor

21

Wilmington, DE 19801
(302) 577-8400
zachary.stirparo@delaware.gov

*Counsel for Defendants*
Delaware Department of Safety and Homeland
Security, DDSHS Secretary Nathaniel McQueen,
Jr. in his official capacity, and DSP Superintendent
Melissa Zebley in her official capacity