## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

THOMAS S. NEUBERGER; JERRY L.
MARTIN; WILLIAM R. HAGUE, JR.;
DELAWARE STATE SPORTSMEN'S
ASSOCIATION, INC; and BRIDGEVILLE
RIFLE & PISTOL CLUB, LTD.,

      Plaintiffs.

      v.

NATHANIEL MCQUEEN, JR., in his official
capacity as Cabinet Secretary, Delaware
Department of Safety and Homeland Security;
and COL. WILLIAM CROTTY, in his official
capacity as Superintendent of the Delaware
State Police,

      Defendants.

Civil Action No. 1:24-cv-00590-MN

## OPENING BRIEF IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

Date:   March 7, 2025

DELAWARE DEPARTMENT OF JUSTICE

Zachary Stirparo (#6928)
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
zachary.stirparo@delaware.gov


FRESHFIELDS US LLP

Eric B. Bruce (admitted *pro hac vice*)
Jennifer B. Loeb (admitted *pro hac vice*)
Lauren Kaplin (admitted *pro hac vice*)
Jacob Johnston (admitted *pro hac vice*)
700 13th Street, NW, 10th Floor
Washington, DC 20005
(202) 777-4500
eric.bruce@freshfields.com
jennifer.loeb@freshfields.com
lauren.kaplin@freshfields.com
jacob.johnston@freshfields.com

Rebecca Curwin Kerr (admitted *pro hac vice*)
3 World Trade Center
175 Greenwich Street, 51st Floor
New York, NY 10007
(212) 277-4000
rebecca.kerr@freshfields.com


*Counsel for Defendants*
Nathaniel McQueen, Jr. in his official capacity as
Cabinet Secretary, Delaware Department of Safety
and Homeland Security; and Col. William Crotty in
his official capacity as Superintendent of the
Delaware State Police

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ........................................................................................................... 1

STATEMENT OF FACTS .................................................................................................. 3

   I.   PARTIES TO THE PROCEEDING .......................................................................... 3

   II.   LEGISLATIVE HISTORY ....................................................................................... 3

   III.   THE STATUTE'S MECHANICS ............................................................................. 4

   IV.  PLAINTIFFS' MISCHARACTERIZATION OF THE STATUTE ................................. 5

LEGAL STANDARD ...................................................................................................... 6

ARGUMENT ................................................................................................................ 6

   I.   COUNT I OF THE SECOND AMENDED COMPLAINT MUST BE DISMISSED. ....... 6

       A.   Plaintiffs Lack Standing to Bring a Claim Alleging Infringement of Second Amendment Rights. ................................................................................... 6

       B.   Plaintiffs Fail to State a Claim Alleging Infringement of Second Amendment Rights. ............................................................................................... 10

           1.   The Statute is a presumptively constitutional shall-issue licensing regime....... 12

           2.   Plaintiffs cannot rebut the presumption of constitutionality because the Statute does not infringe or effectively deny rights under the Second Amendment. ....... 15

       C.   The Statute's Constitutional Applications Preclude Plaintiffs' Challenge. ............. 15

   II.   COUNT II OF THE SECOND AMENDED COMPLAINT MUST BE DISMISSED ..... 16

       A.   Plaintiffs Lack Standing to Bring a Claim Alleging Infringement of Fourth Amendment Rights. ................................................................................... 16

       B.   Plaintiffs Fail to State a Claim Alleging Infringement of Fourth Amendment Rights ................................................................................................ 18

   III.  COUNT III OF THE SECOND AMENDED COMPLAINT MUST BE DISMISSED.... 20

       A.   The Statute Provides Notice to Persons of Ordinary Intelligence .......................... 21

       B.   The Statute Has Adequate Safeguards to Prevent Arbitrary and Discriminatory Enforcement. ............................................................................................ 23

CONCLUSION ............................................................................................................ 25

# TABLE OF AUTHORITIES

**Cases**                                                 **Page(s)**

*Antonyuk v. James*,
  120 F.4th 941 (2d Cir. 2024) ...................................................................................7, 14, 16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................................6, 10

*Baraka v. McGreevey*,
  481 F.3d 187 (3d Cir. 2007)............................................................................................8

*Beers v. AG United States*,
  927 F.3d 150 (3d Cir. 2019)..........................................................................................16

*Binderup v. Att'y Gen.*,
  836 F.3d 336 (3d Cir. 2016)..........................................................................................12

*Carpenter v. United States*,
  585 U.S. 296 (2018)......................................................................................................20

*Chandler v. Miller*,
  520 U.S. 305 (1997)......................................................................................................18

*Circuit City Stores, Inc. v. Adams*,
  532 U.S. 105 (2001)......................................................................................................19

*City of Los Angeles, Calif. v. Patel*,
  576 U.S. 409 (2015)......................................................................................................18

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013)..............................................................................................6, 9, 17

*CMR D.N. Corp. v. City of Philadelphia*,
  703 F.3d 612 (3d Cir. 2013)..........................................................................................22

*Colo. Outfitters Ass'n v. Hickenlooper*,
  823 F.3d 537 (10th Cir. 2016) ......................................................................................10

*Dailey v. City of Philadelphia*,
  417 F. Supp. 3d 597 (E.D. Pa. 2019) ...........................................................................21

*District of Columbia v. Heller*,
  554 U.S. 570 (2008)......................................................................................................12

*Fahr v. City of San Diego*,
  2021 WL 4895974 (S.D. Cal. Oct. 20, 2021) .................................................................9

*Ferguson v. Charleston*,
    532 U.S. 67 (2001) ........................................................................................... 18

*Firearm Owners Against Crime v. City of Harrisburg*,
    2016 WL 1162283 (M.D. Pa. Mar. 24, 2016) ........................................................ 8

*Fischer v. Governor of N.J.*,
    842 F. App'x 741 (3d Cir. 2021) ......................................................................... 8

*Grayned v. City of Rockford*,
    408 U.S. 104 (1972) .............................................................................. 21, 22, 23

*Hotel & Rest. Emps. & Bartenders Int'l Union Loc. 54 v. Read*,
    832 F.2d 263 (3d Cir. 1987) ............................................................................... 24

*Johnson v. United States*,
    576 U.S. 591 (2015) ......................................................................................... 24

*Kach v. Hose*,
    589 F.3d 626 (3d Cir. 2009) ............................................................................... 13

*Kaspersky Lab, Inc. v. U.S. Dep't of Homeland Sec.*,
    909 F.3d 446 (D.C. Cir. 2018) ............................................................................. 8

*Koons v. Platkin*,
    673 F. Supp. 3d 515 (D.N.J. 2023) ............................................................ *passim*

*Kuck v. Danaher*,
    822 F. Supp. 2d 109 (D. Conn. 2011) ..................................................... 22, 23, 25

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ................................................................................ 6, 7, 17

*Maryland v. Pringle*,
    540 U.S. 366 (2003) ......................................................................................... 25

*McRorey v. Garland*,
    99 F.4th 831 (5th Cir. 2024) .............................................................................. 12

*Md. Shall Issue, Inc. v. Moore*,
    116 F.4th 211 (4th Cir. 2024) ................................................................... *passim*

*Morris v. Eberle & BCI, LLC*,
    2014 WL 4352872 (D.N.J. Sept. 3, 2014) ............................................................. 6

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
    597 U.S. 1 (2022) .................................................................................... *passim*

*Or. Firearms Fed'n v. Kotek*,
    682 F. Supp. 3d 874 (D. Or. 2023) ............................................................ 11, 14, 25

*Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Sup. Ct.*,
    894 F.3d 235 (6th Cir. 2018) ........................................................................21

*Reading v. North Hanover Township*,
    124 F.4th 189 (3d Cir. 2024) ...........................................................................9

*Rodriguez v. City of San Jose*,
    930 F.3d 1123 (9th Cir. 2019) .......................................................................20

*Schneyder v. Smith*,
    653 F.3d 313 (3d Cir. 2011) ...........................................................................18

*Sibron v. New York*,
    392 U.S. 40 (1968) ..........................................................................................18

*State v. Smith*,
    2020 WL 5223531 (Del. Super. Aug. 18, 2020) ..................................... 20, 23

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) .........................................................................................10

*United States v. Banks*,
    884 F.3d 998 (10th Cir. 2018) .......................................................................19

*United States v. Brown*,
    448 F.3d 239 (3d Cir. 2006) ...........................................................................19

*United States v. Diallo*,
    575 F.3d 252 (3d Cir. 2009) ...........................................................................22

*United States v. Gonzalez*,
    905 F.3d 165 (3d Cir. 2018) .....................................................................21, 22

*United States v. Lucha El Libertad*,
    681 F. Supp. 3d 102 (S.D.N.Y. 2023) ............................................................12

*United States v. Marcavage*,
    609 F.3d 264 (3d Cir. 2010) .....................................................................18, 20

*United States v. Rahimi*,
    602 U.S. 680 (2024) .................................................................................6, 15, 16

*United States v. Scheidt*,
    103 F.4th 1281 (7th Cir. 2024) .......................................................................10

iv

**Statutes**

11 Del. C. § 1441 ..................................................................................................................8

11 Del. C. § 1448 ............................................................................................................*passim*

11 Del. C. § 1448C ...............................................................................................................23

11 Del. C. § 1448D ..........................................................................................................*passim*

16 Del. C. § 5001 .................................................................................................................23

Ala. Code § 13A-11-75 .......................................................................................................14

Ariz. Rev. Stat. Ann. § 13-3112 ....................................................................................13, 14

Ark. Code Ann. § 5-73-309 ..........................................................................................13, 14

Colo. Rev. Stat. § 18-12-203 ..............................................................................................14

Colo. Rev. Stat. § 18-12-206 ..............................................................................................15

Fla. Stat. § 790.06 ....................................................................................................13, 14, 15

Idaho Code Ann. § 18-3302K .......................................................................................13, 15

Ill. Comp. Stat., ch. 430, § 66/10 .......................................................................................15

Mo. Rev. Stat. § 571.101 .....................................................................................................14

Mont. Code Ann. § 45-8-321 ..............................................................................................15

Okla. Stat., Tit. 21, § 1290.12 .............................................................................................15

S.C. Code Ann. § 23-31-215 ...............................................................................................15

Wyo. Stat. Ann. § 6-8-104 ..................................................................................................14

**Other Authorities**

Bill Detail, Del. S. 2, 152d Gen. Assemb. (2023), *available at*
    https://legis.delaware.gov/BillDetail/130218 ............................................................4

Delaware Register of Regulations, *available at* https://regulations.delaware.gov. ........................5

Fed. R. Civ. P. 12(b) ..............................................................................................................6

## INTRODUCTION

Senate Substitute 1 for Senate Bill 2 (the **Statute**) is a straightforward handgun permitting statute enacted by the Delaware General Assembly to reduce gun violence without encroaching on individual constitutional rights. Under this permitting regime, the Director of the State Bureau of Investigation (**SBI**) "shall issue" a handgun qualified purchaser permit (a **Permit**) to all applicants not barred by any of five narrow, objective, and definite criteria. The Statute therefore falls squarely within the group of "shall-issue" permitting laws that are presumptively constitutional under *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 14–18 (2022), and is "nearly identical," Compl. ¶ 67, to a Maryland statute the Fourth Circuit upheld on *en banc* review by a vote of 14-2, *Md. Shall Issue, Inc. v. Moore*, 116 F.4th 211, 216 (4th Cir. 2024). Because nothing in this commonsense legislation infringes Constitutional rights, Plaintiffs' claims that the Statute violates the Second, Fourth, and Fourteenth Amendments should be dismissed with prejudice.

*First*, Plaintiffs fail to adequately allege standing to pursue a Second and Fourteenth Amendment claim or to state such a claim. Plaintiffs lack standing because their alleged injuries—purported delays in purchasing handguns—are textbook non-cognizable claims concerning what may (or may not) happen in the future regarding a Statute that has not yet been implemented. Plaintiffs' alternative basis for standing—fear of criminal liability under the Statute—fails because the Statute does not impose liability on handgun purchasers. The Second Amended Complaint's (**SAC**) lack of clear, straightforward standing allegations is unsurprising, as no prospective purchaser otherwise entitled to purchase a handgun will be meaningfully delayed or deterred by the Statute. Plaintiffs fail to a state a facial constitutional claim because the Statute "falls easily within the scope of 'shall-issue' licensing laws that the Supreme Court has indicated are presumptively constitutional." *Md. Shall Issue*, 116 F.4th at 225. Plaintiffs' facial constitutional

challenge also fails because it is beyond dispute that the Statute has constitutional applications, including disarming individuals convicted of a domestic violence offense or who have been involuntarily committed to a mental institution. In sum, even if Plaintiffs had standing to bring a claim, nothing in the SAC or in the Statute itself suggests the Statute is unconstitutional.

*Second*, Plaintiffs claim a provision in the Statute requiring law enforcement to ensure "surrender or removal" of handguns purchased using a Permit that is later revoked violates the Fourth Amendment. Plaintiffs do not have standing to challenge the constitutionality of this provision, as no Plaintiff has pleaded he will apply for a Permit at risk of revocation. Again, this is no surprise, as revocation applies only to permit holders who falsify their applications, are a danger to themselves or others, or are otherwise barred from owning a handgun. Plaintiffs also fail to state a claim, including because the process by which law enforcement will surrender or remove handguns has yet to be determined. The reasonableness of searches under the Fourth Amendment is highly fact-specific, and there are several ways the State could constitutionally effect the surrender of handguns. This speculative claim attacking the constitutionality of an unimplemented statute demonstrates why there is a high bar for facial constitutional challenges such as Plaintiffs', a bar Plaintiffs do not and cannot clear.

Finally, contrary to Plaintiffs' assertion, the Statute is not "void for vagueness" because it uses the word "danger." People of "ordinary intelligence" know what "danger" means. "Danger" is used in common parlance, and it appears in statutes in Delaware and around the country, including a New Jersey gun safety statute that recently withstood a nearly-identical challenge. *See Koons v. Platkin*, 673 F. Supp. 3d 515 (D.N.J. 2023). The Statute also contains safeguards sufficient to prevent arbitrary and discriminatory enforcement, including a clearly-delineated

investigatory process, a probable cause requirement, and two rounds of *de novo* judicial review. 11 Del. C. §§ 1448D(h), (f)(3), (m).

For the foregoing and following reasons, the SAC—Plaintiffs' third attempt at a viable complaint—fails, and Defendants respectfully request that the Court grant their motion and dismiss the SAC with prejudice.[1]

## STATEMENT OF FACTS

## I.      PARTIES TO THE PROCEEDING

Defendant Nathaniel McQueen, Jr. was the Cabinet Secretary of the Delaware Department of Safety and Homeland Security, which is charged with protecting the safety of people and property in Delaware.[2] Defendant Colonel William Crotty is the Superintendent of the Delaware State Police. Each is named in his official capacity.

Plaintiffs Neuberger, Martin, and Hague are individuals who allege that they intend to purchase handguns. SAC ¶ 38. Plaintiffs Delaware State Sportsmen's Association, Inc. (***DSSA***) and Bridgeville Rifle & Pistol Club, Ltd. (***BRPC***) are gun clubs. SAC ¶¶ 41–42.

## II.     LEGISLATIVE HISTORY

After five years of deliberation and debate, Governor Carney signed the Statute into law on May 16, 2024. The purpose of the Statute is to reduce gun violence without infringing the Second Amendment rights of law-abiding citizens. As the Statute's sponsor explained: "123 people die and 577 people are wounded by guns in Delaware in an average year. That is the fifth highest rate of gun violence in the nation . . . . [Senate Bill 2] will drastically reduce these statistics

---

[1] Plaintiffs have stipulated they will not seek to further amend their complaint. ECF No. 40 at 2.
[2] Joshua A. Bushweller is the current Cabinet Secretary.

by creating a requirement for a handgun qualified purchaser permit." Bill Detail, Del. S. 2, 152d Gen. Assemb. (2023).[3]

## III.    THE STATUTE'S MECHANICS

The enacted Statute is a "shall-issue" handgun permitting scheme. *See, e.g.*, *Bruen*, 597 U.S. at 13 n.1 (listing examples of "shall-issue" statutes). Within 30 days of receiving an application for a Permit, the SBI "shall . . . issue" a Permit for the purchase of a handgun to any applicant who meets a set of five non-discretionary criteria. 11 Del. C. § 1448D(b).

The five criteria are narrow, objective, and definite. *First*, the applicant must be at least 21 years old. *Id.* § 1448D(f)(1). *Second*, the applicant cannot be otherwise prohibited from purchasing, owning, possessing, or controlling a deadly weapon—for example, because the applicant was convicted of a felony, narcotics, or domestic violence offense; was involuntarily committed to a mental institution; or is subject to a protective order. *Id.* § 1448D(f)(2). *Third*, there must not exist probable cause to believe the applicant poses a danger of causing physical injury to the applicant or others. *Id.* § 1448D(f)(3). *Fourth*, the applicant must have passed a firearms training course within five years of the application. *Id.* § 1448D(f)(4). And *fifth*, the applicant cannot be otherwise prohibited from purchasing or possessing firearms under Delaware or federal law. *Id.* § 1448D(f)(5). If an applicant does not meet any of these criteria, the Director of the SBI (***Director***) must deny the Permit application in writing, setting forth the reason for the denial. *Id.* § 1448D(i). Denial of a Permit is subject to two rounds of *de novo* judicial review. *Id.* § 1448D(m)(1)–(2).

The Director may revoke a Permit if a permit-holder no longer meets the five criteria. *Id.* § 1448D(l) (***Revocation Provision***). The Director must notify a permit-holder in writing and

---

[3] *Available at* https://legis.delaware.gov/BillDetail/130284. Defendants will refer to the bill as 11 Del. C. § 1448D even though it has not yet been implemented.

without delay when a Permit is revoked. *Id.* § 1448D(l)(2). Revocation is also subject to two rounds of *de novo* judicial review. *Id.* § 1448D(m)(1)–(2). If the Director revokes a Permit and there is "probable cause" to believe the former permit-holder possesses handguns acquired with the revoked permit, law enforcement "shall take action to ensure the surrender or removal of the handguns." *Id.* § 1448D(l)(3). The Statute does not specify a procedure for "surrender or removal." Under the Statute, the SBI "may adopt regulations to administer, implement, and enforce" this requirement. *Id.* § 1448D(q). The Statute is to be implemented the earlier of 18 months from the date of enactment, *i.e.*, November 16, 2025, or once the SBI establishes the necessary processes for implementation, Statute Section 5, neither of which has occurred to date, 11 Del. C. § 1448D (Revisor's Note (2)) (noting enactment on May 16, 2024); Delaware Register of Regulations.[4]

## IV.    PLAINTIFFS' MISCHARACTERIZATION OF THE STATUTE

Plaintiffs repeatedly mischaracterize and misrepresent the Statute, the key provisions of which are described *supra*. *First*, Plaintiffs will not be "subjected to criminal liability . . . because they intend to imminently purchase a handgun," SAC ¶ 47; *see also id.* ¶¶ 2, 49, 141, nor does the Statute "criminalize the purchases of handguns," *id.* ¶ 5. The Statute does not proscribe purchasing handguns without a permit or impose penalties on purchasers. *Second*, the Director may not revoke a permit for "any reason." *Id.* ¶¶ 3, 6, 47. Permits may be revoked only on one of the five grounds listed in 11 Del. C. § 1448D(f). *Third*, after a Permit is revoked, law enforcement may not effect surrender or removal of handguns "based on that fact alone." SAC ¶ 58; *see also id.* ¶ 3. There must also be probable cause to believe an ex-permitholder has handguns purchased with the permit. 11 Del. C. § 1448D(*l*)(3). *Finally*, the Statute does not authorize search or seizure without judicial

---

[4] *Available at* https://regulations.delaware.gov.

review, pre-compliance review, or a warrant. SAC ¶¶ 134–36, 140. Each of these misstatements should be disregarded in adjudicating Defendants' motion to dismiss.

## LEGAL STANDARD

Plaintiffs have not adequately alleged standing. FED. R. CIV. P. 12(b)(1). To allege standing, "the party asserting jurisdiction must demonstrate (1) an "injury in fact," (2) that the injury is "fairly traceable" to the action or actions complained of, and (3) that the injury will likely be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992). To confer standing, future injury must be "certainly impending." *Id.* at 564 n.2. The standing inquiry is "especially rigorous" where, as here, the constitutionality of a statute is at issue. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013).

Plaintiffs also fail to state a claim. FED. R. CIV. P. 12(b)(6). To state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts adjudicating motions to dismiss accept well-pleaded factual allegations as true, but courts disregard allegations that mischaracterize or contradict the text of statutes. *Morris v. Eberle & BCI, LLC*, 2014 WL 4352872, at *4 (D.N.J. Sept. 3, 2014) ("The Court cannot adopt Plaintiff's reading because it contradicts the plain language of the statute.").

A facial challenge such as Plaintiffs' can succeed only if a litigant "establish[es] that no set of circumstances exists under which the Act would be valid.'" *United States v. Rahimi*, 602 U.S. 680, 693 (2024) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)).

## ARGUMENT

I.    **COUNT I OF THE SECOND AMENDED COMPLAINT MUST BE DISMISSED.**

A.    **Plaintiffs Lack Standing to Bring a Claim Alleging Infringement of Second Amendment Rights.**

6

Plaintiffs do not adequately allege standing to challenge the Statute on Second Amendment grounds because they have not pled an "injury in fact—an invasion of a legally protected interest." *Lujan*, 504 U.S. at 560 (internal quotation marks omitted). Plaintiffs allege that complying with the Statute will delay their purchase of handguns. Specifically, Neuberger and Martin allege that they intend to purchase handguns on November 28, 2025—Black Friday—when they expect the prices to be most favorable, SAC ¶¶ 23, 34, but that the Statute will require them to engage in a "lengthy and arduous" process first, SAC ¶ 35. Hague alleges he "will not be able to purchase a handgun in Delaware until he reaches 21, on May 15, 2027." SAC ¶ 37.

Neuberger and Martin's alleged injuries are baseless. The Statute limits the permitting process to 30 days, so as long as the Statute is in effect by October 29, 2025, they can undergo the permitting process and will not experience any delay in purchasing their handguns on November 28. And even if the Statute were implemented later—*i.e.*, at the latest possible implementation date of November 16, 2025—this would amount to at most an 18-day delay, which is not a cognizable Second Amendment injury. *Md. Shall Issue*, 116 F.4th at 227 ("By equating 'infringement' with any temporary delay, the plaintiffs improperly discount the Supreme Court's guidance that requirements such as background checks and training instruction, which necessarily occasion some delay, ordinarily will pass constitutional muster."); *Antonyuk v. James*, 120 F.4th 941, 985 n.32 (2d Cir. 2024) ("We thus agree with the Fourth Circuit that despite some delay occasioned by shall-issue permit processes, this type of licensing law is presumptively constitutional." (internal

quotation marks omitted)).[5] For Hague, too, the 30-day delay he may experience when he applies for a permit when he turns 21 will not amount to a cognizable Second Amendment injury.[6] *See id.*

All three Plaintiffs also allege that they will face a risk of prosecution if they do not comply with the Statute. SAC ¶¶ 31, 47. This allegation is belied by the text of the Statute and is not entitled to a presumption of a truth. *See generally* 11 Del. C. § 1448D. The Statute has not yet been implemented, but even if it were in effect, Plaintiffs would not be subject to liability because the statute criminalizes only "willfully and intentionally *sell[ing]*" a handgun to individuals without a permit. It does not impose any liability on handgun *purchasers*. *See* 11 Del. C. § 1448D(h); SAC ¶ 141. There is therefore no injury conferring standing to challenge the Statute on Second Amendment grounds. *See, e.g.*, *Firearm Owners Against Crime v. City of Harrisburg*, 2016 WL 1162283, at *6 (M.D. Pa. Mar. 24, 2016) (dismissing Second Amendment claim on standing grounds where plaintiffs failed to plausibly allege "an intention to engage in a course of conduct that violate[d] the ordinance" or a "credible threat of prosecution thereunder" (internal quotation marks omitted)).

---

[5] Neuberger's and Martin's allegations that the application process will delay their alleged November 28, 2025 handgun purchases are also entirely speculative, and the Court need not accept them as true. *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (courts are not compelled to accept "unsupported conclusions and unwarranted inferences"). Neuberger and Martin do not allege when the Statute will be implemented or how long their applications will take and therefore cannot credibly allege delay in purchasing a handgun nine months after filing the SAC.

[6] Hague has not alleged an imminent or concrete intention to purchase a handgun, and the statute would not preclude him from doing so. *See* 11 Del. C. § 1441. But even if he had, Hague's "injury" would not be redressable because 11 Del. C. § 1448(5) bars firearm purchases by individuals under 21. *See Kaspersky Lab, Inc. v. U.S. Dep't of Homeland Sec.*, 909 F.3d 446, 465 (D.C. Cir. 2018) (holding plaintiffs failed to establish standing to challenge agency directive where separate statute "prohibit[ed] all the same conduct as the [d]irective," reasoning that "even if . . . the Court were to order the rescission of the [directive], [the plaintiff's] harms would not be redressed"); *Fischer v. Governor of N.J.*, 842 F. App'x 741, 750–51 (3d Cir. 2021) ("T]he redressability element [of Article III standing] is not satisfied if a favorable result would eliminate one of multiple causes of an injury without actually decreasing the injury at all.") (quoting 15 Moore's Federal Practice: Civil § 101.42 (2020)).

Even if Plaintiffs had plausibly alleged injuries, this Court should disregard them because they are manufactured. Plaintiffs have been attempting to manufacture standing since filing the original complaint ten months ago. *See* ECF 1. But Plaintiffs cannot "manufacture standing merely by inflicting harm on themselves." *Reading v. North Hanover Township*, 124 F.4th 189, 198 (3d Cir. 2024); *see also Clapper*, 568 U.S. at 418 (holding "self-inflicted" constitutional injuries "are not fairly traceable to the Government's purported[ly] [unconstitutional activities]" and thus do not give rise to standing).

This case is similar to *Fahr v. City of San Diego*, 2021 WL 4895974 (S.D. Cal. Oct. 20, 2021). There, San Diego issued an ordinance prohibiting the possession of non-serialized firearms and firearm components known as "unfinished frames and unfinished receivers." *Id.* at *1. The ordinance was enacted a month before its effective date, giving plaintiffs "ample time to use their non-serialized 'unfinished frames' and 'unfinished receivers' to construct []compliant AR-15s as they had intended" and apply to the DOJ for a serial number. *Id.* at *13. But plaintiffs did not do so, and instead alleged that the ordinance was a regulatory taking. *Id.* at *12. In denying their motion for preliminary relief, the court remarked on the "the murkiness of the ground upon which Plaintiff is permitted to pursue wholly self-inflicted constitutional violations." *Id.* at *13.

Likewise, here, Plaintiffs could have purchased handguns at any point since they filed the initial complaint (perhaps even on Black Friday 2024) without going through the permitting process but apparently have not. *See* SAC ¶ 45. Instead, after alleging for 10 months and two iterations of the complaint that their purchases were imminent, *see* Compl. ¶¶ 26–36; Am. Compl. ¶¶ 23–33, Neuberger and Martin now allege they will purchase handguns on Black Friday 2025—just twelve days after the deadline for the Statute to be implemented.

Finally, Plaintiffs DSSA and BRPC lack standing because they fail to "make specific allegations establishing that at least one *identified* member . . . would suffer harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009) (emphasis added). Other than allegations pertaining to Hague and Martin, which are insufficient to plead standing, *see supra* at 7–9, DSSA and BRPC's claims are unsupported by any allegations regarding a specific DSSA or BRPC member. "The mere possibility that 'some day' a member of [plaintiff organization] might wish to obtain or retain a firearm . . . and that he or she might then experience difficulties [meeting] the requisite [permitting requirements] is insufficient to establish an imminent injury for purposes of Article III standing." *Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 553 (10th Cir. 2016).

Because Plaintiffs have not alleged an injury—let alone one that is certainly impending—their Second Amendment claim should be dismissed.

### B. Plaintiffs Fail to State a Claim Alleging Infringement of Second Amendment Rights.

Because Plaintiffs do not and cannot state a Second Amendment claim, Count I must be dismissed with prejudice. The Statute is constitutional under *Heller* and *Bruen* and as Plaintiffs acknowledged in their original Complaint, "nearly identical" to a Maryland statute the Fourth Circuit upheld on *en banc* review by a vote of 14-2, *Md. Shall Issue*, 116 F.4th at 216. Plaintiffs' legal assertions to the contrary misstate governing law and its application to the Statute, and these legal errors are afforded no weight on a motion to dismiss. *See Ashcroft*, 556 U.S. at 678.

*Bruen* established a new two-step framework for evaluating Second Amendment challenges. Courts first determine whether "the Second Amendment's plain text covers an individual's conduct," *Bruen*, 597 U.S. at 17, such that it "'infringes' the Second Amendment right" to lawful self-defense. *Md. Shall Issue*, 116 F.4th at 220; *see also United States v. Scheidt*, 103 F.4th 1281, 1284 (7th Cir. 2024) (declining to undertake the second step of *Bruen* analysis where

statute did not "infringe" Second Amendment rights). If the challenged law burdens the Second Amendment, at the second step, "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 17.

Here, the Court need not reach step two because "shall-issue" licensing laws such as the Statute are presumptively constitutional under *Bruen*, and Plaintiffs have not rebutted, and cannot rebut, that presumption.[7] *See Md. Shall Issue*, 116 F.4th at 222–23. In *Bruen*, the Supreme Court emphasized that "shall-issue" licensing laws do not "prevent law-abiding, responsible citizens from exercising their Second Amendment right[s]." 597 U.S. at 38 n.9 ("Footnote Nine"). To the contrary, *Bruen* was clear that "nothing in [the Court's] analysis should be interpreted to suggest the unconstitutionality of the 43 States' 'shall-issue' licensing regimes." *Id.*

In a concurrence joined by the Chief Justice, Justice Kavanaugh underscored in *Bruen* that "shall-issue licensing regimes are constitutionally permissible, subject of course to an as-applied challenge if a shall-issue licensing regime does not operate in that manner in practice." *Id.* at 80 (Kavanaugh, J., concurring). Justice Kavanaugh then set forth defining features of shall-issue regimes, explaining that they "may require a license applicant to undergo fingerprinting, a background check, a mental health records check, and training in firearms handling and in laws regarding the use of force, among other possible requirements." *Id.* The Supreme Court's pronouncements in dicta are binding if they are "recent and detailed" and, as the Fifth Circuit

---

[7] *Bruen* concerned shall-issue regimes for open carry licenses, but "the rationale supporting the Supreme Court's 'shall-issue' discussion applies with equal force to 'shall-issue' licensing laws governing the possession of firearms, and nothing in that discussion signals a contrary intent." *Md. Shall Issue*, 116 F.4th at 223; *see also Or. Firearms Fed'n v. Kotek*, 682 F. Supp. 3d 874, 936 (D. Or. 2023) (applying *Bruen* footnote nine to a permit-to-purchase regime).

recently held, "it doesn't get more recent or detailed than [the 'shall-issue' discussion in] *Bruen*." *McRorey v. Garland*, 99 F.4th 831, 837 (5th Cir. 2024).

Thus, according to the framework set forth in *Bruen*, there are two Second Amendment questions before the Court: *first*, whether the Statute is a presumptively-constitutional "shall-issue" permitting law, and *second*, whether plaintiffs can rebut its constitutionality. *See Md. Shall Issue*, 116 F.4th at 222–23 ("[W]e hold that non-discretionary 'shall-issue' licensing laws are presumptively constitutional . . . a plaintiff [may] rebut this presumption of constitutionality by showing that a 'shall-issue' licensing law effectively 'den[ies]' the right to keep and bear arms"); *see also United States v. Lucha El Libertad*, 681 F. Supp. 3d 102, 110 (S.D.N.Y. 2023) ("[B]oth the majority opinion [in *Bruen*] and Kavanaugh concurrence indicated the likely constitutionality of shall-issue regimes . . . without first conducting any exhaustive historical analysis, suggesting that such 'shall-issue' regimes do not infringe the right to keep and bear arms.").[8] Here, the Statute is presumptively constitutional, and Plaintiffs cannot rebut its constitutionality.

### 1. The Statute is a presumptively constitutional shall-issue licensing regime.

The Statute is a prototypical "shall issue" licensing regime under which the SBI "*shall*, on application, *issue* a handgun qualified purchaser permit to all" applicants meeting five criteria. 11 Del. C. § 1448D(b) (emphasis added); *see supra* at 3–4. Each criterion is "narrow, objective, and definite," *Bruen*, 597 U.S. at 13 n.9 (internal citation omitted), and many of the 43 shall-issue

---

[8] "Shall-issue" permit-to-purchase laws such as the Statute also "comport with the Second Amendment because they affect individuals or conduct unprotected by the right to keep and bear arms." *Binderup v. Att'y Gen.*, 836 F.3d 336, 343 (3d Cir. 2016) (en banc). Indeed, "[t]he plain text [of the Second Amendment] covers plaintiffs' right 'to keep and bear arms[,]'" but "on its face 'keep and bear' does not include purchase." *McRorey*, 99 F.4th at 838 (internal citations omitted). Permit-to-purchase laws merely "impos[ing] conditions and qualifications on the commercial sale of arms," are "presumptively lawful regulatory measures." *District of Columbia v. Heller*, 554 U.S. 570, 626–27 & n.26 (2008).

licensing regimes cited in *Bruen* use the same criteria to ensure "those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens,'" *id*. As Plaintiffs alleged in their first Complaint, the Statute is "nearly identical," Compl. ¶ 67, to a Maryland regulation that "falls easily within the scope of 'shall issue' licensing laws that Supreme Court has indicated are presumptively constitutional." *Md. Shall Issue*, 116 F.4th at 225. The five criteria in the Statute are:

*First*, an applicant must be at least 21 years old. 11 Del. C. § 1448D(f)(1). Age is an objective criterion, *Kach v. Hose*, 589 F.3d 626, 641 n.16 (3d Cir. 2009) (when a statute sets out an age limit, "age is a matter of objective fact"), and is common to many of the shall-issue licensing regimes cited in *Bruen*.[9]

*Second*, an applicant must not be "prohibited from purchasing, owning, possessing, or controlling a deadly weapon under § 1448 of this title." 11 Del. C. § 1448D(f)(2). Section 1448 bars from purchasing or possessing a gun individuals (1) convicted or indicted for a felony, narcotics, or domestic violence offense; (2) involuntarily committed to a mental institution or found mentally incompetent; (3) subject to a protective order or order of relinquishment; and (4) who illegally possess a controlled substance. 11 Del. C. § 1448. These objective criteria are consistent with many of the statutory schemes cited in *Bruen*.[10]

*Third,* the applicant must not be "a person who poses a danger of causing physical injury to self or others by owning, purchasing, or possessing firearms," but only if such danger is "supported by probable cause." 11 Del. C. § 1448D(f)(3). This is a sufficiently objective criterion conferring less discretion on state officials than statutes *Bruen* refers to as permissible shall-issue

---

[9] *E.g.*, Ariz. Rev. Stat. Ann. § 13-3112(E)(2); Ark. Code Ann. § 5-73-309(3)(A) (Supp. 2021); Fla. Stat. § 790.06(2)(b) (2021); Idaho Code Ann. § 18-3302K(4)(a).
[10] *E.g.*, Fla. Stat. § 790.06(2) (2021); Ariz. Rev. Stat. Ann. § 13-3112(E)(3)–(4); Ark. Code Ann. § 5-73-309(5).

regimes.[11] *See also Antonyuk*, 120 F.4th at 995 ("Bruen categorized as 'shall-issue' jurisdictions at least twelve other licensing schemes that call for discretionary judgments, such as whether the applicant 'causes justifiable concern for public safety'"). Moreover, Permit applicants may appeal a rejection to the Justice of the Peace Court and again to the Superior Court for *de novo* hearings, which "significantly limits the discretion of individual permitting agents." *Or. Firearms,* 682 F. Supp. 3d at 939 (holding "dangerousness" standard sufficiently objective because permitting regimes cited in *Bruen* contained similar appellate mechanisms).

*Fourth,* applicants must complete a "firearms training course," 11 Del. C. § 1448D(f)(4), which *Bruen* cited as an example of a sufficiently objective criteria that shall-issue regimes "often require." *Bruen,* 597 U.S. at 38 n.9.

*Fifth,* the applicant must not be a "person who is otherwise prohibited from purchasing or possessing firearms under the law of this State or federal law." 11 Del. C. § 1448D(f)(5). This requirement is also identical to requirements in many of the shall-issue statutes cited in *Bruen*.[12]

Because each of these five criteria is objective and definite, the Statute is a presumptively constitutional shall-issue licensing regime. *See Antonyuk*, 120 F.4th at 995 (finding permitting requirements objective and definite because several of "the forty-three licensing regimes that *Bruen* described as consistent with its analysis" contained similar requirements).

---

[11] *E.g.*, Ala. Code § 13A-11-75(a)(1)(a) (shall deny permit where official "has a *reasonable suspicion* that the person may use a weapon unlawfully or . . . endanger the person's self or others.") (emphasis added); Colo. Rev. Stat. § 18-12-203(2) (whether there is "a *reasonable belief* that . . . the applicant will present a danger to self or others") (emphasis added); Mo. Rev. Stat. § 571.101 (whether there is "a *reasonable belief* that the applicant presents a danger to himself or others") (emphasis added); Wyo. Stat. Ann. § 6-8-104(g) (2021) ("whether there are *reasonable grounds* to believe that the applicant has been or is reasonably likely to be a danger to himself or others") (emphasis added).

[12] *E.g.,* Ariz. Rev. Stat. Ann. § 13-3112(E)(3); Ark. Code Ann. § 5-73-309(5); Colo. Rev. Stat. § 18-12-203(1)(c); Fla. Stat. § 790.06(2)(n) (2021).

**2.    Plaintiffs cannot rebut the presumption of constitutionality because the Statute does not infringe or effectively deny rights under the Second Amendment.**

Plaintiffs' constitutional challenge "can survive step one of the *Bruen* analysis only if they demonstrate that the law 'infringes,' or effectively denies," Second Amendment rights. *Md. Shall Issue*, 116 F.4th at 225 (quoting *Bruen,* 597 U.S. at 38 n.9). To do so, Plaintiffs must show the law has been "put toward abusive ends," for example, by imposing "lengthy wait times in processing license applications or exorbitant fees." *Bruen,* 597 U.S. at 38 n.9.

Plaintiffs make no such allegations here, nor could they. The Statute requires the SBI to issue a Permit within 30 days of the application date, 11 Del. C. § 1448D(h)—which is fewer than many of the presumptively-constitutional "shall issue" statutes cited in *Bruen*.[13]

Further, neither the Statute nor the Second Amended Complaint specify application fees or training course costs, so there is no basis for challenging them. Nearly a year before the Statute is likely to be implemented, Plaintiffs have not—and cannot—adequately allege the Statute has been put toward abusive ends.

**C.    The Statute's Constitutional Applications Preclude Plaintiffs' Challenge.**

Plaintiffs' facial challenge[14] fails because the Statute is—at the very least—"constitutional in at least some of its applications." *Rahimi*, 602 U.S. at 708 (Gorsuch, J., concurring). A facial challenge can succeed only if a litigant "establish[es] that no set of circumstances exists under which the Act would be valid.'" *Id*. at 693 (quoting *Salerno*, 481 U.S. at 745).

---

[13] *See, e.g.,* Colo. Rev. Stat. § 18-12-206(1) (90 days); Fla. Stat. § 790.06(6)(c) (90 days); Idaho Code Ann. § 18-3302K(1) (90 days); Ill. Comp. Stat., ch. 430, § 66/10(e) (90 days); S.C. Code Ann. § 23-31-215(C) (90 days); Okla. Stat., Tit. 21, § 1290.12(13) (60 or 90 days); Mont. Code Ann. § 45-8-321(1) (60 days); *see also Md. Shall Issue,* 116 F.4th at 227 (finding statute's 30-day period is not lengthy where it is "far shorter than many of the permissible processing periods cited by the Supreme Court in *Bruen*").

[14] Plaintiffs' challenge is necessarily facial because the Statute has not yet been implemented or applied.

As in *Antonyuk v. James*, "Plaintiffs assume that licensing officers will act in bad faith, but facial challenges require the opposite assumption." 120 F.4th at 987 (rejecting facial challenge to similar licensing statute). Here, there are many circumstances in which the Statute is valid and constitutional under binding Supreme Court and Third Circuit precedent. For example, the Director must deny a Permit application if the applicant is subject to a domestic violence protective order. 11 Del. C. §§ 1448D(f)(2), 1448(a)(6). That is squarely constitutional under *Rahimi*, in which the Supreme Court held the Second Amendment "allows the Government to disarm individuals who present a credible threat to the physical safety of others," and denied a facial challenge to a law prohibiting individuals subject to domestic violence protective orders from possessing firearms. 602 U.S. at 700. The Statute also requires the Director to deny a Permit to anyone "involuntarily committed for a mental condition," 11 Del. C. § 1448(a)(2)(a), which is constitutional under binding Third Circuit precedent. *Beers v. AG United States*, 927 F.3d 150, 158 (3d Cir. 2019) (upholding a federal law prohibiting possession of a firearm by anyone who has "been committed to a mental institution."), *dismissed as moot*, 822 F. App'x 56 (3d Cir. 2020).

It is therefore beyond dispute that the Statute is constitutional in "at least some applications," and Plaintiffs' facial challenge should accordingly be dismissed with prejudice. *See Rahimi*, 602 U.S. at 693 (where one application is permissible, the court "need not decide whether [other applications are] also permissible"); *Antonyuk*, 120 F.4th at 987 (denying facial challenge to gun licensing regime because "[p]ermissible outcomes are possible (and we think likely) under the statute").

## II.    COUNT II OF THE SECOND AMENDED COMPLAINT MUST BE DISMISSED.

### A.    Plaintiffs Lack Standing to Bring a Claim Alleging Infringement of Fourth Amendment Rights.

Plaintiffs lack standing to challenge the Statute on Fourth Amendment grounds. As with

their Second Amendment claim, Plaintiffs fail to allege injury that is "concrete and particularized," and "certainly impending." *Lujan*, 504 U.S. at 560–61, 564 n.2; *see also supra* at 7–10.

Plaintiffs' Fourth Amendment claim relates to 11 Del. C. § 1448D(l)(3), which provides that if the SBI revokes a permit, law-enforcement shall "take action to ensure surrender or removal of [the permit-holder's] handguns" if there is "probable cause to believe" the permit-holder still has handguns purchased with the permit (***Probable Cause Provision***). To allege standing, Plaintiffs must plead that their Fourth Amendment rights are implicated. Each Plaintiff must therefore allege that (1) he will apply for a permit; (2) the SBI will issue the permit; (3) he will purchase handguns with the permit; (4) he will take an action warranting revocation of the permit, for example, by being convicted of a crime of violence; (5) the Director will revoke his permit; (6) he will retain handguns purchased with the permit; (7) there will be probable cause to believe he has retained the handguns; and (8) the State Police or a local law-enforcement agency will take action to ensure surrender or removal of the handguns. *See id.*

None of the Plaintiffs pleads even the first step, let alone all eight. Four of the five Plaintiffs claim they or their members "do[] not have the time to go through" the process of applying for a permit. SAC ¶¶ 30, 35. The fifth alleges only that, "as an 18-year-old, [he] is not eligible for a permit under" the Statute. SAC ¶ 37. Absent a Permit application, Plaintiffs cannot allege they will receive permits, purchase handguns, have their permits revoked, and be subject to the Probable Cause Provision. And even if the Second Amended Complaint had alleged that Plaintiffs or their members intended to apply for permits, they could not allege the string of eight hypothetical events set out above with sufficient certainty or particularity. *See Clapper*, 568 U.S. at 410 (respondents lacked standing to allege Fourth Amendment claim because their argument rested on a "highly

17

speculative fear" requiring a chain of five hypothetical events). Plaintiffs therefore have not—and cannot—allege standing to bring a facial constitutional challenge on Fourth Amendment grounds.

### B.    Plaintiffs Fail to State a Claim Alleging Infringement of Fourth Amendment Rights.

It is difficult to bring a successful facial challenge under the Fourth Amendment because the "constitutional validity of a warrantless search is pre-eminently the sort of question which can only be decided in the concrete factual context of the individual case." *Sibron v. New York,* 392 U.S. 40, 59 (1968). When assessing the reasonableness of a seizure, a court "must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Schneyder v. Smith,* 653 F.3d 313, 325 (3d Cir. 2011) (citation omitted).

Here, the Statute does not specify how the Probable Cause Provision will be implemented. Instead, the SBI is directed to "adopt regulations to administer, implement, and enforce" the Statute. 11 Del. C. § 1448D(q). Because the Statute has not yet been implemented, there are no applicable procedures or searches for this Court to evaluate.[15] As there are no guidelines for administering the Probable Cause Provision—let alone a "factual context" to assess, *Sibron,* 392 U.S. at 59— Plaintiffs cannot adequately allege the Statute will violate the Fourth Amendment in "all of its applications." *United States v. Marcavage,* 609 F.3d 264, 273 (3d Cir. 2010); *see also City of Los Angeles, Calif. v. Patel*, 576 U.S. 409, 416 (2015) ("[C]laims for facial relief under the Fourth

---

[15] Plaintiffs cite a series of distinguishable cases striking down statutes for violating the Fourth Amendment. SAC ¶ 126. The statutes at issue in those cases compelled blanket searches without individualized analysis. *See, e.g.*, *Chandler v. Miller*, 520 U.S. 305, 308–09 (1997) (striking down a Georgia statute requiring candidates for certain state offices to pass a drug test); *Ferguson v. Charleston*, 532 U.S. 67, 86 (2001) (striking down a hospital policy authorizing searches for cocaine where there was no probable cause or reasonable suspicion of cocaine use). Here, the Statute (i) does not authorize searches and (ii) requires an individualized revocation process and probable cause before law enforcement may facilitate surrender of handguns from a handgun owner whose permit has been revoked.

Amendment are unlikely to succeed when there is substantial ambiguity as to what conduct a statute authorizes.").

There are several constitutional processes the SBI could use to administer the Probable Cause Provision.

*First*, law enforcement could provide notice to individuals whose permits have been revoked and instruct them to surrender handguns purchased with the permit.[16] This process would not implicate the Fourth Amendment. *See United States v. Brown,* 448 F.3d 239, 245 (3d Cir. 2006) (Fourth Amendment relevant only to seizures).

*Second*, law enforcement could obtain a warrant before removing handguns purchased with a revoked permit, which would be constitutional under the Fourth Amendment. *See, e.g., United States v. Banks,* 884 F.3d 998, 1011 (10th Cir. 2018) ("A search or seizure is presumptively reasonable if it's based on a warrant supported by probable cause.") (*citing Brigham City v. Stuart,* 547 U.S. 398, 403 (2006)).

*Third*, even without a warrant, there are circumstances in which a seizure conducted pursuant to the Statute would be constitutional. For example, if a permit-holder is subject to a restraining order for threatening a child, *see* 11 Del. C. § 1448(a)(6), then the warrantless removal of handguns purchased with that Permit would likely be constitutional because the individual poses

---

[16] Plaintiffs assert that the Probable Cause Provision applies to all guns in a former permitholder's possession, citing testimony from Secretary McQueen. SAC ¶ 133; *see also id.* ¶¶ 3 n.4, 59, 142. Plaintiffs mischaracterize Secretary McQueen's testimony: he stated that law enforcement may remove "all the [weapons] that are purchased, all the weapons in the home," and that "[law enforcement] would have records of any firearms that were purchased with the permit to purchase card." Bill Detail, Del. S. 2, 152d Gen. Assemb. (2023). This indicates the Probable Cause Provision applies only to guns purchased with the Permit. In any event, McQueen's testimony has no bearing on interpretation of the Statute because he is not a legislator. *See, e.g.*, *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 120 (2001) (declining to give any weight to statements made by individuals who were not members of Congress).

a credible threat to the safety of others. *See, e.g.*, *Carpenter v. United States,* 585 U.S. 296, 319–20 (2018) (recognizing that exigent circumstances justifying a warrantless search include "protect[ing] individuals who are threatened with imminent harm"). Similarly, if the Director revokes an individual's Permit because the individual is mentally ill, *see* 11 Del. C. § 1448(a)(2), the warrantless removal of handguns purchased with that Permit would again likely be constitutional because law enforcement would have an objective, reasonable basis to conclude there was "an immediate need to protect others or themselves from serious harm." *See Rodriguez v. City of San Jose,* 930 F.3d 1123, 1138 (9th Cir. 2019) (citation omitted) (holding seizure did not violate Fourth Amendment where individual was experiencing an "acute mental health episode"); *see also State v. Smith*, 2020 WL 5223531, at *6 (Del. Super. Aug. 18, 2020) (ruling that order requiring mentally ill Air Force member to relinquish his gun was reasonable).

As this non-exhaustive list demonstrates, Plaintiffs have not alleged that the Probable Cause Provision is "unconstitutional in all its applications," *Marcavage,* 609 F.3d at 273, so their facial constitutional challenge fails, and Count II must be dismissed as to all Defendants for failure to state a claim.

## III.    COUNT III OF THE SECOND AMENDED COMPLAINT MUST BE DISMISSED.

Count III of the SAC should be dismissed because people of "ordinary intelligence" know the meaning of the word "danger," and because its use does not render the Statute facially unconstitutional. Plaintiffs assert the Statute is unconstitutionally vague because § 1448D(f) prohibits the Director from issuing a Permit if there is probable cause to believe the applicant "poses a danger of causing physical injury to self or others by owning, purchasing, or possessing firearms." SAC ¶ 153; *see also* § 1448D(*l*)(1)(a) (permitting the Director to revoke a Permit on the same grounds). This straightforward language, which Plaintiffs call the "danger standard," SAC ¶ 155, is common to statutes in Delaware and around the country. Similar language recently

withstood a void-for-vagueness challenge in New Jersey, *Koons v. Platkin*, 673 F. Supp. 3d 515 (D.N.J. 2023), and the same result is appropriate here.

A statute is void for vagueness "only if it either (1) fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits or (2) authorizes or even encourages arbitrary and discriminatory enforcement." *United States v. Gonzalez*, 905 F.3d 165, 190 n.10 (3d Cir. 2018) (internal quotation marks omitted). A litigant bringing a facial vagueness challenge must meet a "particularly demanding standard." *Dailey v. City of Philadelphia*, 417 F. Supp. 3d 597, 617 (E.D. Pa. 2019), *aff'd*, 819 F. App'x 71 (3d Cir. 2020) (quoting *Heffner v. Murphy*, 745 F.3d 56, 65 (3d Cir. 2014)); *see also supra* at 16, 18 (discussing the exacting standard for facial challenges in context of the Second and Fourth Amendments).

### A.    The Statute Provides Notice to Persons of Ordinary Intelligence.

Plaintiffs' vagueness challenge to an everyday term like "danger" strains credulity. *See* SAC ¶ 155 (referring to the "danger standard"). The Statute adequately alerts people with reasonable intelligence about the conduct that it prohibits because 'danger' is used in both "legal and common parlance." *Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Sup. Ct.*, 894 F.3d 235, 247 (6th Cir. 2018) ("[W]here the challenged language is commonly used in both legal and common parlance, it often will be sufficiently clear so that a reasonable person can understand its meaning.") (internal quotation marks omitted). The standard of posing a danger to oneself or others is not unconstitutionally vague because (i) people of ordinary intelligence can easily interpret it in the context of the Statute, (ii) the standard is regularly used in other statutes, and (iii) the term itself has withstood similar vagueness challenges. *See Grayned v. City of Rockford*, 408 U.S. 104, 110–14 (1972) ("extrapolat[ing]" from other language in the ordinance, other courts' interpretations of similar language in analogous statutes, and the ordinance's announced purpose

and context).

*First*, when assessing whether a person of ordinary intelligence can ascertain the meaning of a challenged statutory term, courts "look to the law as a whole." *CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612, 631 (3d Cir. 2013). Here, the Statute provides ample context and instruction as to the meaning of "danger." The danger standard itself defines danger with reference to "causing physical injury to self or others." 11 Del. C. § 1448D(f)(3). The Statute provides further context for "danger" in its list of requirements for firearms training courses, which include lessons on items such as violent confrontation and suicide prevention. *See id.* §1448D(f)(4)(j)-(k). Stepping back, the "particular context" of the Statute also "gives fair notice to those to whom it is directed," *see Grayned*, 408 U.S. at 112: the Statute is a shall-issue licensing regime intended to reduce gun violence. From this, "an ordinary person [can] exercis[e] ordinary common sense" and understand the meaning of "danger" as used in the Statute. *Gonzalez*, 905 F.3d at 190 n.10; *United States v. Diallo*, 575 F.3d 252, 258–60 (3d Cir. 2009) (relying on term's context to interpret the meaning of "use" within a statute). This context is more than sufficient to provide notice, as a statute is not required to "achieve meticulous specificity, which would come at the cost of flexibility and reasonable breadth." *Koons*, 673 F. Supp. 3d at 571; *see also Kuck v. Danaher*, 822 F. Supp. 2d 109, 134 (D. Conn. 2011) ("[T]he legislature cannot possibly be expected to anticipate in advance every circumstance in which a person could potentially pose a danger to the public if entrusted with a firearm.").

*Second*, "danger" is also defined in other Delaware statutes, which provide further context and clarity. *See Grayned*, 408 U.S. at 110 (pointing to "interpretations . . . given to analogous statutes"). Delaware's civil procedures for relinquishment of firearms, for example, define mentally ill individuals who are "dangerous to others" or "dangerous to self" as posing "a

substantial likelihood that the person will inflict serious bodily harm upon another person within the reasonably foreseeable future" based on the "person's history, recent behavior, and any recent act or threat." *See* 11 Del. C. §§ 1448C(a)(2), (4). Delaware's involuntary commitment laws feature a similar definition of the "danger" posed by an individual. *See* 16 Del. C. §§ 5001(3)-(4). Delaware's courts evidently have no issue interpreting the danger standard, having applied it in cases such as *State v. Smith*, 2020 WL 5223531, at *3 (Del. Super. Aug. 18, 2020). *See Grayned*, 408 U.S. at 112 (relying on similar phrases in other case law to interpret statute).

*Third*, the District of New Jersey recently upheld a similar New Jersey firearm permitting scheme on the same grounds. *Koons*, 673 F. Supp. 3d at 572–573. In *Koons*, plaintiffs challenged a New Jersey firearms permitting provision allowing officials to deny a permit to an individual "known in the community in which the person lives as someone who has engaged in acts or made statements suggesting the person is likely to engage in conduct, other than justified self-defense, *that would pose a danger to self or others*." *Koons*, 673 F. Supp. 3d at 555 (emphasis added). The court held that the provision "provides notice to persons of ordinary intelligence to understand what conduct will prevent him or her from obtaining" a permit because it "focus[es] on danger or risk of harm." *Id.* at 572. By incorporating near-identical language, and using an everyday term already present in Delaware law, the Statute provides constitutionally sufficient notice to prospective permit applicants and permit holders. *Cf. supra* at 14 n.10.

### B.    The Statute Has Adequate Safeguards to Prevent Arbitrary and Discriminatory Enforcement.

The Statute also has adequate safeguards to prevent arbitrary and discriminatory enforcement, including straightforward procedures, § 1448D(h), a "probable cause" requirement for the 'danger' standard, § 1448D(f)(3), and two rounds of *de novo* judicial review, § 1448D(m). *See, e.g., Kuck,* 822 F. Supp. 2d at 134 (denying vagueness challenge because the statute "provides

sufficient guidance . . . to eliminate the risk of arbitrary enforcement in its enumerated qualifications"). Plaintiffs can succeed on a void-for-vagueness challenge of a statute that provides sufficient notice only if they can allege the same statute is "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). Plaintiffs cannot do so here.

Plaintiffs allege the Statute creates an "ad hoc and subjective" decision-making process, SAC ¶ 151, but this is belied by the Statute itself. Indeed, the Director has "sufficient direction" to constitutionally enforce the Statute. *Hotel & Rest. Emps. & Bartenders Int'l Union Loc. 54 v. Read*, 832 F.2d 263, 269 (3d Cir. 1987). Section (h) of the Statute, for example, instructs the SBI to investigate each permit application through three delineated processes. First, the SBI shall take the applicant's fingerprints, compare them "with any records of fingerprints in this State" and submit them to the Federal Bureau of Investigation "with a request that a search of the National Instant Criminal Background Check System be conducted." 11 Del. C. § 1448D(h)(1). Second, the SBI shall search the Delaware Criminal Justice Information System "to determine if the applicant is prohibited under the law of this State or federal law from purchasing or possessing a firearm." *Id.* Third, the SBI shall contact the local law enforcement agency of each county or municipality in which the applicant has resided for the previous five years and "inquire as to any facts and circumstances relevant to the person's qualification for a handgun qualified purchaser permit." *Id.* § 1448D(h)(2)(a)-(b).

Using the information gleaned from the SBI's investigation, the Director can "determine" whether a person "does not qualify" for a Permit. *Id.* § 1448D(i). To deny (or, if a Permit already was granted, revoke) on the basis that the applicant (or permit holder) "poses a danger of causing physical injury to self or others by owning, purchasing, or possessing firearms," the Director must have "probable cause." *Id.* § 1448D(f)(3). This probable cause requirement imposes on the

24

Director a higher standard than state officials are held to under statutes that *Bruen* refers to as permissible shall-issue regimes. *See supra* at 13–14; *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) ("[T]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt, and that the belief of guilt must be particularized with respect to the person to be searched or seized.") (cleaned up). The Statute provides an additional check against discriminatory decisions by requiring the Director to submit annually to the Delaware House and Senate committees on the Judiciary "[d]emographic data on applicants aggrieved by a denial or revocation for a handgun qualified purchaser permit." 11 Del. C. § 1448D(n)(6).

The Statute, moreover, creates a transparent and fair process to challenge an adverse decision from the Director. Upon denying an application for a Permit, the Director must "notify the person, in writing, setting forth the specific reasons for the denial." 11 Del. C. § 1448D(i); *see also id.* § 1448D(*l*)(2) (mandating "written notice of revocation"). The aggrieved individual then can request a hearing in the Justice of the Peace Court to challenge the Director's decision. *Id.* § 1448D(m)(1). The individual is entitled to appeal the Justice of the Peace Court's decision to the Superior Court for a hearing de novo. *Id.* § 1448D(m)(2). Courts have consistently viewed "appellate procedures" like those in the Statute as "safeguard[s] against a licensing authority's arbitrary decision" to deny or revoke a firearms permit. *Koons*, 673 F. Supp. 3d at 572; *Kuck*, 822 F. Supp. 2d at 134–35; *Or. Firearms*, 682 F. Supp. 3d at 939.

Because the Statute provides fair notice of prohibited conduct and prevents arbitrary or discriminatory enforcement, Plaintiffs cannot plead a violation of the Due Process Clause of the Fourteenth Amendment, and Count III should be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, the Complaint should be dismissed with prejudice.

25

Dated: March 7, 2025

Respectfully submitted,

DELAWARE DEPARTMENT OF JUSTICE

/s/ Zachary Stirparo
Zachary Stirparo (#6928)
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
zachary.stirparo@delaware.gov


FRESHFIELDS US LLP

Eric B. Bruce (admitted *pro hac vice*)
Jennifer B. Loeb (admitted *pro hac vice*)
Lauren Kaplin (admitted *pro hac vice*)
Jacob Johnston (admitted *pro hac vice*)
700 13th Street, NW, 10th Floor
Washington, DC 20005
(202) 777-4500
eric.bruce@freshfields.com
jennifer.loeb@freshfields.com
lauren.kaplin@freshfields.com
jacob.johnston@freshfields.com

Rebecca Curwin Kerr (admitted *pro hac vice*)
3 World Trade Center
175 Greenwich Street, 51st Floor
New York, NY 10007
(212) 277-4000
rebecca.kerr@freshfields.com


*Counsel for Defendants*
Nathaniel McQueen, Jr. in his official capacity as Cabinet Secretary, Delaware Department of Safety and Homeland Security; and Col. William Crotty in his official capacity as Superintendent of the Delaware State Police

26