**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

THOMAS S. NEUBERGER; JERRY L.
MARTIN; WILLIAM R. HAGUE, JR.;
DELAWARE STATE SPORTSMEN'S
ASSOCIATION, INC; and BRIDGEVILLE
RIFLE & PISTOL CLUB, LTD.,

            Plaintiffs.

            v.

NATHANIEL MCQUEEN, JR., in his official
capacity as Cabinet Secretary, Delaware
Department of Safety and Homeland Security;
and COL. WILLIAM CROTTY, in his official
capacity as Superintendent of the Delaware
State Police,

            Defendants.

Civil Action No. 1:24-cv-00590-MN

**REPLY BRIEF IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

Date:   April 11, 2025

DELAWARE DEPARTMENT OF JUSTICE

Zachary Stirparo (#6928)
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
zachary.stirparo@delaware.gov


FRESHFIELDS US LLP

Eric B. Bruce (admitted *pro hac vice*)
Jennifer B. Loeb (admitted *pro hac vice*)
Lauren Kaplin (admitted *pro hac vice*)
Jacob Johnston (admitted *pro hac vice*)
700 13th Street, NW, 10th Floor
Washington, DC 20005
(202) 777-4500
eric.bruce@freshfields.com
jennifer.loeb@freshfields.com
lauren.kaplin@freshfields.com
jacob.johnston@freshfields.com

Rebecca Curwin Kerr (admitted *pro hac vice*)
3 World Trade Center
175 Greenwich Street, 51st Floor
New York, NY 10007
(212) 277-4000
rebecca.kerr@freshfields.com


*Counsel for Defendants*
Nathaniel McQueen, Jr. in his official capacity as
Cabinet Secretary, Delaware Department of Safety
and Homeland Security; and Col. William Crotty in
his official capacity as Superintendent of the
Delaware State Police

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... ii

INTRODUCTION .................................................................................................... 1

ARGUMENT .......................................................................................................... 2

   I.   COUNT I OF THE SECOND AMENDED COMPLAINT MUST BE DISMISSED. ....... 2

      A.   Plaintiffs Lack Standing to Bring a Claim Alleging Infringement of Second Amendment Rights. ............................................................................... 2

      B.   Plaintiffs Fail to State a Claim Alleging Infringement of Second Amendment Rights. ....................................................................................................... 6

          1.   The Statute is Constitutional under *Bruen*. ........................................... 6

          2.   The Statute's Constitutional Applications Preclude Plaintiffs' Second Amendment Claim. .................................................................................. 9

   II.   COUNT II OF THE SECOND AMENDED COMPLAINT MUST BE DISMISSED. ..... 11

      A.   Plaintiffs Lack Standing to Bring a Claim Alleging Infringement of Fourth Amendment Rights. ............................................................................... 11

      B.   Plaintiffs Fail to State a Claim Alleging Infringement of Fourth Amendment Rights. ............................................................................... 11

   III.   PLAINTIFFS HAVE NOT ADEQUATELY ALLEGED THAT THE STATUTE IS UNCONSTITUTIONALLY VAGUE. ............................................................... 12

CONCLUSION ...................................................................................................... 15

i

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Antonyuk v. James*,
    120 F.4th 941 (2d Cir. 2024) ...................................................................4, 6, 8, 10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).........................................................................................6

*BBLI Edison LLC v. City of Chicago*,
    2025 WL 744025 (N.D. Ill. Mar. 7, 2025)....................................................15

*City of Los Angeles, Calif. v. Patel*,
    576 U.S. 409 (2015)......................................................................................9, 12

*Colo. Outfitters Ass'n v. Hickenlooper*,
    823 F.3d 537 (10th Cir. 2016) .........................................................................2

*Const. Party of Pa. v. Aichele*,
    757 F.3d 347 (3d Cir. 2014)............................................................................5

*Crownholm v. Moore*,
    652 F. Supp. 3d 1155 (E.D. Cal. 2023).........................................................15

*Def. Distributed v. Platkin*,
    697 F. Supp. 3d 241 (D.N.J. 2023) ............................................................6, 15

*District of Columbia v. Heller*,
    554 U.S. 570 ...................................................................................................4

*District of Columbia v. Wesby*,
    583 U.S. 48 (2018)........................................................................................14

*Grayned v. City of Rockford*,
    408 U.S. 104 (1972)..........................................................................13, 14, 15

*Griglak v. CTX Mortg. Co.*,
    2010 WL 1424023 (D.N.J. Apr. 8, 2010) .................................................11, 13

*Hausknecht v. John Hancock Life Ins. Co. of N.Y.*,
    334 F. Supp. 3d 665 (E.D. Pa. 2018) ...............................................................2

*Hays v. City of Urbana, Ill.*,
    104 F.3d 102 (7th Cir. 1997) ...........................................................................4

*Knudsen v. MetLife Grp., Inc.*,
    117 F.4th 570 (3d Cir. 2024) ...........................................................................3

*Koons v. Platkin*
    673 F. Supp. 3d 515 (D.N.J. 2023) ....................................................................14

*Kost v. Kozakiewicz,*
    1 F.3d 176 (3d Cir. 1993).................................................................................15

*Lara v. Comm'r Pa. State Police,*
    125 F.4th 428 (3d Cir. 2025) .........................................................................9, 10

*Lozano v. City of Hazleton,*
    620 F.3d 170 (3d Cir. 2010).................................................................................5

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992).........................................................................................11

*McRorey v. Garland,*
    99 F.4th 831 (5th Cir. 2024) ...............................................................................8

*Md. Shall Issue, Inc. v. Moore,*
    116 F.4th 211 (4th Cir. 2024) ....................................................................6, 7, 8, 9

*Nat'l Shooting Sports Found. v. Att'y Gen. of N.J.,*
    80 F.4th 215 (3d Cir. 2023) ................................................................................3

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen,*
    597 U.S. 1 (2022)..................................................................................... *passim*

*Off. Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery,*
    330 F.3d 548 (3d Cir. 2003).................................................................................8

*Or. Firearms Fed'n v. Kotek,*
    682 F. Supp. 3d 874 (D. Or. 2023) .......................................................................7

*Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.,*
    836 F.2d 173 (3d Cir. 1988)................................................................................3

*Rigby v. Jennings,*
    630 F. Supp. 3d 602 (D. Del. 2022)......................................................................6

*Rocky Mountain Gun Owners v. Polis*
    121 F.4th 96 (10th Cir. 2024) ..............................................................................4

*State v. Smith,*
    2020 WL 5223531 (Del. Super. Aug. 18, 2020)....................................................13

*TransUnion LLC v. Ramirez,*
    594 U.S. 413 (2021)..........................................................................................11

*U.S. Express Lines Ltd. v. Higgins*,
   281 F.3d 383 (3d Cir. 2002) ................................................................15

*United States v. Biden*,
   733 F. Supp. 3d 331 (D. Del. 2024) .......................................................9

*United States v. Gonzalez*,
   905 F.3d 165 (3d Cir. 2018) ...........................................................12, 13

*United States v. Mitchell*,
   652 F.3d 387 (3d Cir. 2011) ................................................................12

*United States v. Rahimi*,
   602 U.S. 680 (2024) ...........................................................................10

*United States v. Scheidt*,
   103 F.4th 1281 (7th Cir. 2024) .............................................................6

*vMedex, Inc. v. TDS Operating, Inc.*,
   2020 WL 4925512 (D. Del. Aug. 21, 2020) .........................................13

*Yukutake v. Lopez*,
   130 F.4th 1077 (9th Cir. 2025) ..........................................................7, 8

*Zanetich v. Wal-Mart Stores E., Inc.*,
   123 F.4th 128 (3d Cir. 2024) ................................................................6

**Statutes**

11 Del. C. § 1448 ....................................................................................10

11 Del. C. § 1448D ............................................................................*passim*

18 U.S.C. § 922 ......................................................................................10

Ariz. Rev. Stat. § 13-3102 .......................................................................13

430 Ill. Comp. Stat. § 66/10 ....................................................................13

Md. Code Pub. Safety § 5-306 .................................................................13

Mo. Rev. Stat. § 571.101 .........................................................................13

N.J. Stat. Ann. § 2C:58-3 .........................................................................13

## INTRODUCTION

The Statute is a straightforward permitting scheme intended to reduce gun violence without encroaching on constitutional rights. Plaintiffs claim the Statute violates the Second, Fourth, and Fourteenth Amendments, but they have not adequately alleged standing or stated a claim on which relief can be granted.

*First*, Plaintiffs' Second Amendment claim should be dismissed because they do not allege an injury-in-fact. Plaintiffs instead assert *future* injuries, but they do not allege whether they will comply with the Statute. If they do comply, the cost of compliance is neither alleged, nor a cognizable Second Amendment injury. And if Plaintiffs do not comply, there is still no risk of prosecution or penalty: the Statute does not impose liability on alleged handgun purchasers. This claim also should be dismissed because the Statute falls squarely within the group of "shall issue" permitting laws that are presumptively constitutional under *Bruen*. Plaintiffs argue this discussion in *Bruen* is "irrelevant dicta," but the Second, Fourth, Fifth, and Ninth Circuits have each applied this supposedly "irrelevant" language to decide Second Amendment challenges to permitting statutes. Moreover, Plaintiffs do not contest that the Statute has constitutional applications, and that alone is sufficient to defeat their facial challenge.

*Second*, Plaintiffs' Fourth Amendment claim should be dismissed because they do not allege standing or oppose Defendants' motion to dismiss on that basis. Plaintiffs' facial constitutional challenge also fails because they do not allege the Probable Cause Provision is "unconstitutional in all of its applications." Nor could they: because the Statute has not been implemented, there are no procedures or processes for the Court to evaluate.

*Finally*, Plaintiffs' void-for-vagueness challenge fails because the Statute has adequate safeguards to prevent arbitrary enforcement and provides people of ordinary intelligence an

opportunity to understand the conduct it prohibits. Plaintiffs cite no authority to the contrary.

For the foregoing and following reasons, Defendants respectfully request that the Court grant their motion and dismiss the Second Amended Complaint ("SAC") with prejudice.[1]

## ARGUMENT

## I.    COUNT I OF THE SECOND AMENDED COMPLAINT MUST BE DISMISSED.

### A.    Plaintiffs Lack Standing to Bring a Claim Alleging Infringement of Second Amendment Rights.

Plaintiffs do not adequately allege standing because they fail to plead an injury-in-fact. Plaintiffs also fail to contest several related points and "have, thus, waived the argument[s]." *Hausknecht v. John Hancock Life Ins. Co. of N.Y.*, 334 F. Supp. 3d 665, 679 (E.D. Pa. 2018) (plaintiffs waived standing argument uncontested in opposition to motion to dismiss); *see also Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 544 (10th Cir. 2016) (considering "only those arguments in favor of standing that the plaintiffs have adequately briefed"). Specifically, Plaintiffs do not refute that (1) minor delay caused by the permitting process, if any, is not a cognizable injury, D.I. 42 at 7–8 ("Brief"); (2) Hague has alleged neither an injury nor redressability, *id*. at 8, n.6; (3) DSSA and BRPC have not alleged an independent basis for organizational standing, *id*. at 10; and (4) Plaintiffs attempted to manufacture standing by inflicting harm on themselves, *id*. at 9. Any opposition to these arguments is therefore waived, which is grounds for granting Defendants' motion to dismiss Count I of the SAC, *id.* at 6–10.

Because Plaintiffs cannot allege an injury-in-fact caused by the as-yet unimplemented Statute, they argue instead that they have standing to bring a pre-enforcement challenge in anticipation of *future* injury. Standing to bring a pre-enforcement challenge is "the exception rather

---

[1] Pursuant to the stipulation the Court ordered on February 19, 2025, Plaintiffs are not permitted to amend their complaint. D.I. 40.

than the rule." *Nat'l Shooting Sports Found. v. Att'y Gen. of N.J.*, 80 F.4th 215, 219 (3d Cir. 2023). Courts "allow some such challenges" because "[w]e do not force people seeking to exercise their constitutional rights to wait until they are prosecuted criminally." *Id*. The parties agree that for this exception to apply, Plaintiffs must adequately allege they "(1) intend to take action that is (2) arguably affected with a constitutional interest but is (3) arguably forbidden by the law, and (4) the threat of enforcement against them is substantial." *Id*. (internal quotation marks omitted); *see* D.I. 44 ("Opposition") at 4. Plaintiffs fail each part of this conjunctive test.

As an initial matter, Plaintiffs' "intend[ed] . . . action," if any, is murky. *Nat'l Shooting*, 80 F.4th at 219. Plaintiffs do not allege they will comply with the Statute. Instead, Plaintiffs allege a "choice" either to comply with the Statute or to "attempt to purchase a handgun without applying for a permit." SAC ¶¶ 47, 141. Plaintiffs cannot simultaneously argue that complying with the Statute burdens their Second Amendment rights *and* that they risk prosecution for failing to comply with the Statute. In either event, Plaintiffs fail to allege standing.

On one hand, Plaintiffs *argue* that if they comply with the Statute, they "will be responsible for the costs of complying," Opp. at 3, which will make it "more difficult . . . to acquire a firearm legally." *Id.* at 4. But Plaintiffs do not *allege* that they "will be responsible for the costs of complying with the Statute," Opp. at 3, let alone what those costs are. *See Knudsen v. MetLife Grp., Inc.*, 117 F.4th 570, 582–83 (3d Cir. 2024) (holding speculative allegations concerning cost increases did not establish standing). Plaintiffs cannot use any such costs to back into standing via their Opposition. *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."). Even if Plaintiffs had alleged they would comply with the Statute, and would therefore incur specific, concrete costs, they would not have pre-enforcement standing because

such costs do not affect Second Amendment rights.[2] Plaintiffs rely on *Rocky Mountain Gun Owners v. Polis* for this point, but there, the plaintiff challenged a statute that barred him from purchasing a firearm. 121 F.4th 96, 109 (10th Cir. 2024). Here, by contrast, the Statute does not bar Plaintiffs from purchasing a handgun; it simply enacts a permitting process. It is well-established that time and expense incurred in connection with applying for a permit pursuant to the Statute is not a legally cognizable injury. *See, e.g.*, *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 38 n.9 (2022) ("[S]hall-issue regimes, which often require applicants to undergo a background check or pass a firearms safety course, are designed to ensure only that those bearing arms in the jurisdiction are, in fact, law-abiding, responsible citizens." (internal quotation marks omitted)); *District of Columbia v. Heller*, 554 U.S. 570, 626–27 n.26 ("presumptively lawful regulatory measures" include "laws imposing conditions and qualifications on the commercial sale of arms"); *Antonyuk v. James*, 120 F.4th 941, 985 n.32 (2d Cir. 2024) ("[D]espite some delay occasioned by 'shall-issue' permit processes, this type of licensing law is presumptively constitutional."). And there is obviously no threat of enforcement if Plaintiffs comply with the Statute.

On the other hand, Plaintiffs argue there is "a credible threat of prosecution" under the Statute, Opp. at 4–5, if they "attempt to purchase a handgun without applying for a permit," SAC ¶ 47; *see also id.* ¶ 31. Plaintiffs' insistence that they face criminal prosecution is inexplicable. The Statute criminalizes "willfully and intentionally *sell[ing]*" a handgun to individuals without a

---

[2] Plaintiffs quote *Hays v. City of Urbana, Ill.*, 104 F.3d 102, 103 (7th Cir. 1997), for the proposition that "[c]osts of compliance . . . can constitute [an] injury," Opp. at 3–4 , but they omit a key phrase. In full, the quoted sentence reads "[c]osts of compliance *necessary to avoid prosecution* can constitute that injury." *Hays*, 104 F.3d at 103 (emphasis added). The SAC does not allege Plaintiffs would incur costs *to avoid prosecution. See infra* at 4–5. *Hays* therefore does not support Plaintiffs' claim that *absent* a threat of prosecution, cost of compliance can constitute an injury for pre-enforcement standing purposes.

permit. It does not impose any liability on alleged handgun purchasers. *Compare* 11 Del. C. § 1448D(h) *with* SAC ¶ 141. Defendants corrected Plaintiffs' incorrect reading of the Statute in each iteration of their opening brief. D.I. 14 at 5; D.I. 31 at 9 n.6; Br. at 8. Yet, despite being corrected on three separate occasions, Plaintiffs continue to assert that they may be "prosecuted." Plaintiffs' continued assertion suggests either willful ignorance or an abject misunderstanding of the law underlying their claims.

Finally, Plaintiffs imply they may avoid this fundamental requirement for pre-enforcement standing because they are "objects" or "targets" of the Statute, Opp. at 3, but they are wrong as a matter of law. Plaintiffs cite *Const. Party of Pa. v. Aichele*, 757 F.3d 347 (3d Cir. 2014), and *Lozano v. City of Hazleton*, 620 F.3d 170 (3d Cir. 2010), *vacated on other grounds*, 563 U.S. 1030 (2011), in support of this premise, but both are inapposite. In each case, the challenged legislation was already effective and imposed penalties on classes of individuals and entities to which plaintiffs belonged. In *Aichele*, plaintiff political parties and candidates challenged a statute that had "been a vehicle for imposing significant litigation expenses on non-major parties and their candidates [via a statutory cost-shifting sanctions provision]." 757 F.3d at 363 (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164 (2014) and noting history of past enforcement as predictor of future enforcement). In *Lozano*, businesses, landlords, and tenants challenged local ordinances that regulated and imposed penalties on plaintiffs, including fines, loss of business licenses, and the creation of a private right of action. 620 F.3d at 184–92. Here, by contrast, Delaware has not implemented or enforced the Statute, and the Statute does not penalize or sanction alleged handgun purchasers under any circumstances. Defendants are unaware of any applicable jurisdictional basis for a pre-enforcement challenge when there is no threat of enforcement, and Plaintiffs have not identified one.

Plaintiffs therefore fail to plead standing to bring a Second Amendment claim.

**B.    Plaintiffs Fail to State a Claim Alleging Infringement of Second Amendment Rights.[3]**

Even if Plaintiffs had alleged standing, their Second Amendment claim must be dismissed because the Statute is a "shall-issue" licensing regime. *Bruen*, 597 U.S. at 38 n.9. Such "shall-issue licensing regimes are constitutionally permissible." *Id.* at 80 (Kavanaugh, J., concurring). Plaintiffs' claim therefore fails, and none of their arguments to the contrary is persuasive.

**1.    The Statute is Constitutional under *Bruen*.**

Plaintiffs assert the Statute is unconstitutional because it "restricts conduct self-evidently covered" by the Second Amendment, Opp. at 7, but this states incorrectly both the *Bruen* standard and precedent interpreting *Bruen*. The *Bruen* step one inquiry is whether the law "'infringes' the Second Amendment right to keep and bear arms." *Md. Shall Issue, Inc. v. Moore*, 116 F.4th 211, 220 (4th Cir. 2024). It is not enough for the law merely to relate to protected conduct. *See United States v. Scheidt*, 103 F.4th 1281, 1284 (7th Cir. 2024) (declining to undertake second step of *Bruen* analysis where statute did not "infringe" Second Amendment rights); *Antonyuk*, 120 F.4th at 982 (asking whether law at issue "impair[s] Second Amendment rights"); *Rigby v. Jennings*, 630 F. Supp. 3d 602, 613 (D. Del. 2022) (Noreika, J.) (ruling firearm regulations are constitutional because they "[do] not *burden* Plaintiffs' Second Amendment rights because they do not . . . impose onerous regulations.") (emphasis added).

---

[3] Plaintiffs assert it is improper to discuss the "merits" in a motion to dismiss, Opp. at 6, but existing case law precludes Plaintiffs' Second Amendment claim. *See* Br. at 13–14. *Ashcroft v. Iqbal* requires that a complaint "state a claim to relief that is plausible on its face," 556 U.S. 662, 678 (2009), and a claim "necessarily fails the plausibility standard" if it is precluded by existing law such that "there is no version of facts under which [the plaintiff] could state a claim," *Zanetich v. Wal-Mart Stores E., Inc.*, 123 F.4th 128, 138, 147 (3d Cir. 2024) (affirming dismissal where existing case law precluded plaintiff's claim); *see also Def. Distributed v. Platkin*, 697 F. Supp. 3d 241, 275 (D.N.J. 2023) (dismissing Second Amendment claim precluded by existing law).

*Bruen* established "guideposts" that "courts may use to determine whether a 'shall-issue' licensing law 'infringes.'" *Md. Shall Issue*, 116 F.4th at 221. Laws with "narrow, objective, and definite standards," like the 43 *Bruen* examples and the Statute, do not infringe Second Amendment rights. *Bruen*, 597 U.S. at 38 n.9; Br. at 12–14. Plaintiffs argue the Court should ignore *Bruen*'s guideposts because they (1) apply only to permit-to-carry statutes, (2) are dicta, and (3) are inapplicable to statutes barring individuals posing a danger from getting a permit. None of these arguments passes muster.

*First*, Plaintiffs assert *Bruen*'s "shall-issue" analysis applies only to permit-to-carry statutes and is inapplicable to permit-to-purchase statutes. But every court to assess the constitutionality of a permit-to-purchase regime since *Bruen* has cited to and relied on this analysis. *See Md. Shall Issue*, 116 F.4th at 223 (explaining this distinction "rests on a false premise, namely, that the Supreme Court has recognized different levels of constitutional protection for the Second Amendment right to 'keep' arms and the Second Amendment right to 'bear' arms."); *Or. Firearms Fed'n v. Kotek*, 682 F. Supp. 3d 874, 936 (D. Or. 2023) (upholding permit-to-purchase statute based on "*Bruen*'s ninth footnote"); *Yukutake v. Lopez*, 130 F.4th 1077, 1093–94 (9th Cir. 2025) (applying *Bruen* shall-issue analysis to permit-to-purchase statute).[4] Plaintiffs' unsupported belief that these cases were "decided incorrectly," Opp. at 14, is irrelevant.

*Second*, Plaintiffs argue the Court should disregard *Bruen*'s "shall issue" analysis because it is "irrelevant dicta," Opp. at 9, but at least four Circuit Courts have relied on this analysis to evaluate the constitutionality of firearm purchasing requirements. *Md. Shall Issue*, 116 F.4th at

---

[4] Plaintiffs assert (in a footnote) that *Yukutake* "held that a short waiting period imposed in connection with a requirement for a permit to possess a handgun violated the Second Amendment." Opp. at 14 n.10. But the Ninth Circuit made clear that the *Yukutake* plaintiffs "did not contest Hawaii's general requirement that . . . a person must first procure . . . a permit to acquire the ownership of a firearm." *Yukutake*, 130 F.4th at 1081 (cleaned up).

223–24 (14-2 en banc decision); *Antonyuk*, 120 F.4th at 997; *McRorey v. Garland*, 99 F.4th 831, 837 (5th Cir. 2024); *Yukutake*, 130 F.4th at 1095.

In any event, the Supreme Court's pronouncements in dicta are binding if they are "recent and detailed . . . [a]nd it doesn't get more recent or detailed than [the "shall-issue" discussion in] *Bruen*.'" *McRorey*, 99 F.4th at 837; *see also Off. Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548, 561 (3d Cir. 2003) ("The Supreme Court uses dicta to help control and influence the many issues it cannot decide because of its limited docket. [By ignoring dicta, courts can] frustrate the evenhanded administration of justice by giving litigants an outcome other than the one the Supreme Court would be likely to reach were the case heard there.") (internal quotation marks omitted).

*Third*, Plaintiffs claim *Maryland Shall Issue* is not applicable here because the statute there "lacked the discretionary 'dangerousness' clause." Opp. at 14. But the en banc Fourth Circuit held the Maryland law—which Plaintiffs alleged is "nearly identical" to the Statute, Compl. ¶ 67—is constitutional because it "falls easily within the scope of 'shall-issue' licensing laws that the Supreme Court has indicated are presumptively constitutional." *Md. Shall Issue*, 116 F.4th at 225. In other words, the Maryland statute contains requirements that are "narrow, objective, and definite," *Bruen*, 597 U.S. at 38 n.9. So too here: each of the Statute's requirements is mirrored in the 43 regimes *Bruen* identified in its "shall issue" analysis. *See* Br. at 13–14. Plaintiffs argue none of the "shall issue" statutes in the *Bruen* discussion contained dangerousness clauses, Opp. at 13, but the statutes themselves belie that point. *See* Br. at 13–14; *see also Antonyuk*, 120 F.4th at 984 ("[T]he use of dangerousness as a disqualifier does not appear controversial . . . [and] the Supreme Court's approving references to 'good moral character' licensing requirements . . . demonstrate that such requirements are permissible."). The Statute's requirements are thus "narrow, objective,

8

and definite standards" as *Bruen* requires.[5]

### 2. The Statute's Constitutional Applications Preclude Plaintiffs' Second Amendment Claim.

Plaintiffs' Second Amendment claim fails for a second reason. "In the wake of *Bruen*, to defeat a facial challenge under the Second Amendment, 'all the government must do is identify constitutional applications - even if they are unrelated to [the defendant]'s conduct.'" *United States v. Biden*, 733 F. Supp. 3d 331, 335 (D. Del. 2024) (Noreika, J.) (quoting *United States v. Veasley*, 98 F.4th 906, 910 (8th Cir. 2024)). Here, the Statute has several well-settled constitutional applications. For example, the Statute prevents individuals subject to domestic violence restraining orders and individuals involuntarily committed from obtaining permits. *See* Br. at 16. Plaintiffs contend constitutional applications of the Statute are irrelevant because (1) the Statute's constitutional applications overlap with existing laws; (2) Defendants do not consider the "how and why" framework set out in *Bruen*; (3) applying the standard for facial challenges would undercut *Bruen* and *Lara*; and (4) subjecting all Delawareans to the Statute is "plainly unconstitutional," Opp. at 19. None of these arguments is persuasive.

*First*, Plaintiffs argue that because other laws *also* forbid certain groups of people from possessing firearms, the Statute is not being "applied" when it prohibits those same people from receiving permits. *Id*. Plaintiffs misread the facial challenge standard, which focuses on instances where the statute itself "actually authorizes or prohibits conduct," *City of Los Angeles, Calif. v. Patel*, 576 U.S. 409, 416 (2015), and not whether other statutes prohibit the same conduct. Here, the Statute prohibits individuals subject to domestic violence protective orders or involuntary

---

[5] The Court does not need to reach step two of the *Bruen* analysis because 'shall-issue' licensing laws such as the Statute are presumptively constitutional, and Plaintiffs have not rebutted, and cannot rebut, that presumption. *See Md. Shall Issue*, 116 F.4th at 222–23 (rejecting facial challenge at *Bruen* step one). If necessary, Defendants will prove the Statute is generally consistent with the Nation's historical tradition of firearm regulation at an appropriate stage of this litigation.

commitment from obtaining a license or firearm. 11 Del. C. § 1448D(f)(2), 1448(a)(6). It is well-established that these prohibitions, among many others, are constitutional. *See* Br. at 16.

     *Second*, Plaintiffs pluck an irrelevant framework from *Bruen* and encourage the Court to apply it here. Specifically, Plaintiffs ask the Court to consider "how and why the [Statute] burden[s] a law-abiding citizen's right to armed self-defense." Opp. at 19 (quoting *Bruen*, 597 U.S. at 29). But this "how and why" analysis has no place here; *Bruen* held courts should use this framework to determine if a historical law is "relevantly similar" to a modern one. *Bruen*, 597 U.S. at 29. That question is not before the Court. *See supra* note 5.

     *Third*, Plaintiffs wrongly assert that Defendants' formulation of the facial challenge standard undermines *Bruen* and *Lara*. Opp. at 20. *Bruen* was an as-applied challenge, so the facial challenge standard did not apply. *Bruen*, 597 U.S. at 16. And while *Lara* concerned a facial challenge, there the plaintiffs challenged only specific provisions of certain laws. *See Lara v. Comm'r Pa. State Police*, 125 F.4th 428, 431–32 (3d Cir. 2025) (plaintiff challenged specific provisions of laws that produced the "combined effect" of "bann[ing] 18-to-20-year-olds from carrying firearms"). In such cases, courts deny facial challenges if there are constitutional applications of the challenged provisions. *See, e.g.*, *United States v. Rahimi*, 602 U.S. 680, 693 (2024) (considering only applications of specific portion of law challenged by plaintiff: 18 U.S.C. § 922(g)(8)); *Antonyuk*, 120 F.4th at 975, 981, 999 (same). Here, Plaintiffs have challenged the entirety of the Statute, and their facial challenge must be denied because the Statute has constitutional applications.

     *Finally*, Plaintiffs state perfunctorily that "[s]ubjecting all Delawareans to the Statute is plainly unconstitutional under *Bruen*." Opp. at 19. That is incorrect. The Statute prevents certain

groups from obtaining firearms. *See* Br. at 4–5, 16. Such prohibitions are constitutional, *id.* at 15–16, so Plaintiffs' constitutional challenge fails.

## II.    COUNT II OF THE SECOND AMENDED COMPLAINT MUST BE DISMISSED.

### A.    Plaintiffs Lack Standing to Bring a Claim Alleging Infringement of Fourth Amendment Rights.

"[P]laintiffs must demonstrate standing for each claim that they press," *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021), but they fail to allege standing to bring a facial constitutional challenge on Fourth Amendment grounds. This alone requires dismissal of Count II. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (explaining the elements of standing "are not mere pleading requirements but rather an indispensable part of the plaintiff's case"). In their motion, Defendants list the *eight* steps Plaintiffs must allege to have standing to bring a Fourth Amendment claim. Plaintiffs do not plead even the first step, let alone all eight. *See* Br. at 17. Rather than address these deficiencies in their opposition, Plaintiffs entirely ignore Fourth Amendment standing and therefore concede the point. *Griglak v. CTX Mortg. Co.*, 2010 WL 1424023, at *3 (D.N.J. Apr. 8, 2010) ("The failure to respond to a substantive argument to dismiss a count, when a party otherwise files opposition, results in a waiver of that count.").

### B.    Plaintiffs Fail to State a Claim Alleging Infringement of Fourth Amendment Rights.

Even if Plaintiffs had standing, they have not stated a Fourth Amendment claim. The Statute does not specify how the Probable Cause Provision will be implemented; the SBI is directed to "adopt regulations to administer, implement, and enforce" the Statute. 11 Del. C. § 1448D(q). Until that occurs, there are no applicable procedures for the Court to evaluate, and Plaintiffs have not stated—and could not state—a claim that the Probable Cause Provision is

"unconstitutional in all of its applications." *United States v. Mitchell*, 652 F.3d 387, 405 (3d Cir. 2011) (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008)).

Plaintiffs' assertions to the contrary are unpersuasive. *First*, Plaintiffs wrongly assert that under the Statute "the Director would have the discretion to effect the 'surrender' or 'removal' of firearms . . . without a warrant." Opp. at 20. But nothing in the Statute authorizes search or seizure without judicial review, pre-compliance review, or a warrant. *See* Br. at 4–6. *Second*, Plaintiffs contend Defendants "do not demonstrate there are constitutional applications of the Statute that are relevant to Plaintiffs' facial challenge." Opp. at 21. But Plaintiffs concede "the proper focus of the constitutional inquiry is searches that the law actually authorizes." *Patel*, 576 U.S. at 418. Because the SBI has not yet adopted regulations to implement the Statute, we do not yet know what the Statute authorizes. Br. at 18–19; *cf.* Opp. at 21–22. Without applicable procedures or processes for the Court to evaluate, Plaintiffs cannot argue that the Probable Cause Provision is "unconstitutional in all of its applications." *Mitchell*, 652 F.3d at 405. Indeed, "claims for facial relief under the Fourth Amendment are unlikely to succeed when there is substantial ambiguity as to what conduct a statute authorizes," because it is "impossible to tell whether and to what extent it deviates from the requirements of the Fourth Amendment." *Patel*, 576 U.S. at 416 (quoting *Sibron v. New York*, 392 U.S. 40, 59 (1968)).

## III.    PLAINTIFFS HAVE NOT ADEQUATELY ALLEGED THAT THE STATUTE IS UNCONSTITUTIONALLY VAGUE.

Plaintiffs' allegation that the use of the word "danger" renders the Statute unconstitutionally vague, SAC ¶ 153, fails because the Statute (1) contains adequate safeguards to prevent arbitrary and discriminatory enforcement and (2) provides people of ordinary intelligence a reasonable opportunity to understand the conduct it prohibits. Br. at 20–25; *see United States v. Gonzalez*, 905 F.3d 165, 190 n.10 (3d Cir. 2018) (setting forth grounds to determine whether a

statute is void for vagueness).[6]

As to the first void-for-vagueness ground, Defendants described the many safeguards in the Statute, which include straightforward procedures, § 1448D(h), a "probable cause" requirement for the 'danger' standard, § 1448D(f)(3), and two rounds of *de novo* judicial review, § 1448D(m). *See* Br at 23–25. Plaintiffs do not dispute, let alone address, Defendants' argument. *See* Opp. at 22–25. Therefore, Plaintiffs have waived it. *See vMedex, Inc. v. TDS Operating, Inc.*, 2020 WL 4925512, at *7 (D. Del. Aug. 21, 2020) (Noreika, J.) (explaining that if plaintiff fails to address defendant's motion to dismiss argument, plaintiff waives the argument); *see also Griglak*, 2010 WL 142023, at *3.

Plaintiffs fare no better on the second void-for-vagueness ground. The word 'danger' provides "people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits." *Gonzalez*, 905 F.3d at 190 n.10. People of ordinary intelligence can understand the meaning of "danger" in the context of the Statute; the word "danger" is regularly used in legislation[7]; and the term "danger" has withstood similar vagueness challenges. *See* Br. at 21–23; *see also Grayned v. City of Rockford*, 408 U.S. 104, 110–14 (1972) ("extrapolat[ing]" meaning of a term from other language in the ordinance, other courts' interpretations of similar language in analogous statutes, and the ordinance's announced purpose and context).[8]

Plaintiffs do not effectively rebut any of these points. They do not cite *any* authority to

---

[6] Plaintiffs argue that the Statute "requires a higher standard of specificity" because it imposes criminal penalties. *See* Opp. at 22–23. Again, that is false. The Statute does not criminalize the purchase of handguns without a permit. *See supra* at 5.

[7] The word "danger" also appears in several state statutes. *E.g.*, N.J. Stat. Ann. § 2C:58-3(c); Md. Code Pub. Safety § 5-306(a)(10)(i); 430 Ill. Comp. Stat. § 66/10(a)(4); Mo. Rev. Stat. § 571.101(2)(7); and Ariz. Rev. Stat. §§ 13-3102(A)(4), (7)(a).

[8] Plaintiffs argue *State v. Smith*, 2020 WL 5223531 (Del. Super. Aug. 18, 2020), did not interpret "dangerousness." Opp. at 24. But that is precisely the point: The *Smith* court did not need to interpret "danger" because its meaning was readily apparent. 2020 WL 5223531, at *3.

support their claim that the word "danger" does not provide adequate notice to people of ordinary intelligence. Nor do Plaintiffs identify a single case that held a statute was unconstitutionally vague because it used the term "danger"—or, for that matter, any similar commonsense, commonplace term.

Plaintiffs dispute Defendants' analysis, but their attempts to distinguish Defendants' authorities fail. *First*, Plaintiffs cite *Koons v. Platkin*, despite believing it was "decided incorrectly," Opp. at 23. But *Koons* is distinguishable. In *Koons*, the District of New Jersey upheld a permitting provision that allows officials to deny a permit to an individual known "as someone who has engaged in acts or made statements suggesting the person is likely to engage in conduct, other than justified self-defense, that would pose a danger to self or others." 673 F. Supp. 3d 515, 572–73 (D.N.J. 2023). Plaintiffs argue that *Koons* is distinguishable because there, the director was instructed to consider "objective evidence"—*i.e.,* the applicant's "acts and statements." Opp. at 23. But here, too, the "probable cause" standard is objective, § 1448D(f)(3); *District of Columbia v. Wesby*, 583 U.S. 48, 54 n.2 (2018), and the Statute instructs the Director to consider objective evidence, including an applicant's fingerprints, background check data, and other personal facts provided by local law enforcement agencies. 11 Del. C. § 1448D(h)(1).

Second, Plaintiffs misread *Grayned. See* Opp. at 24–25. Faced with a vagueness challenge, the *Grayned* Court looked to the "words of the ordinance itself," the "interpretations the court below [gave] to analogous statutes," and "the interpretation of the statute given by those charged with enforcing it." *Grayned*, 408 U.S. at 110. Plaintiffs suggest that *Grayned* restricts courts to "conclusions on identical terms made by the highest court in the state," Opp. at 24, but *Grayned* imposed no such limit. Indeed, just as Defendants encourage the Court to do here, *Grayned* drew on "particular context" and "common understanding," *Grayned*, 408 U.S. at 112.

14

Lacking authority to support their arguments, Plaintiffs instead argue unconvincingly that Defendants' reliance on the text of the statute and case law is "inappropriate on a motion to dismiss." Opp. at 25. But "[w]hether a statute is unconstitutionally vague is a question of law . . . that may be resolved on a motion to dismiss," *Crownholm v. Moore*, 652 F. Supp. 3d 1155, 1166–67 (E.D. Cal. 2023) (internal quotation marks omitted), and courts "are not required to accept legal conclusions either alleged or inferred from the pleaded facts," *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir. 1993) (internal quotation marks omitted) (cited in Opp. at 25). Courts deciding void-for-vagueness claims regularly interpret challenged statutory terms "in the context [they are] used," *see, e.g.*, *Platkin*, 697 F. Supp. 3d at 264, and examine "the text of the challenged law," *BBLI Edison LLC v. City of Chicago*, 2025 WL 744025, at *3 (N.D. Ill. Mar. 7, 2025). Here, Plaintiffs put the language of the Statute squarely at issue when they challenged it and appended it to the SAC. D.I. 39; *see U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (when deciding a motion to dismiss, a court may rely on "a document integral to or explicitly relied upon in the complaint"). Defendants, in turn, provided the Court with case law and context to interpret the Statute. Br. at 22.

As Plaintiffs have provided no authority to support their vagueness challenge or to rebut Defendants' arguments, Count III should be dismissed with prejudice.

## <u>CONCLUSION</u>

For the foregoing reasons, the Second Amended Complaint should be dismissed with prejudice.

15

Dated: April 11, 2025

Respectfully submitted,

DELAWARE DEPARTMENT OF JUSTICE

/s/ Zachary Stirparo
Zachary Stirparo (#6928)
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
zachary.stirparo@delaware.gov

FRESHFIELDS US LLP

Eric B. Bruce (admitted *pro hac vice*)
Jennifer B. Loeb (admitted *pro hac vice*)
Lauren Kaplin (admitted *pro hac vice*)
Jacob Johnston (admitted *pro hac vice*)
700 13th Street, NW, 10th Floor
Washington, DC 20005
(202) 777-4500
eric.bruce@freshfields.com
jennifer.loeb@freshfields.com
lauren.kaplin@freshfields.com
jacob.johnston@freshfields.com

Rebecca Curwin Kerr (admitted *pro hac vice*)
3 World Trade Center
175 Greenwich Street, 51st Floor
New York, NY 10007
(212) 277-4000
rebecca.kerr@freshfields.com

*Counsel for Defendants*
Nathaniel McQueen, Jr. in his official capacity as Cabinet Secretary, Delaware Department of Safety and Homeland Security; and Col. William Crotty in his official capacity as Superintendent of the Delaware State Police